**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SIERRA MEDICAL SERVICES ALLIANCE; CARE FLIGHT; RIGGS AMBULANCE SERVICE, INC.; SCHAEFER AMBULANCE SERVICE, INC.; AMERICAN AMBULANCE OF VISALIA; DESERT AMBULANCE SERVICE; SAN LUIS AMBULANCE SERVICE, INC.; FIRST RESPONDER EMERGENCY MEDICAL SERVICES-SACRAMENTO, INC.; FIRST RESPONDER EMERGENCY MEDICAL SERVICES, INC.; IMPERIAL AMBULANCE SERVICES, INC.; SIERRA LIFESTAR, INC., DBA Lifestar Ambulance; DEL NORTE AMBULANCE, INC.; PINER'S AMBULANCE, INC.; AMERICAN LEGION POST 108 AMBULANCE SERVICE; PROGRESSIVE AMBULANCE, INC., DBA Liberty Ambulance; HALL AMBULANCE SERVICE, INC.; CITY AMBULANCE OF EUREKA, INC.; PATTERSON DISTRICT AMBULANCE; K.W.P.H. ENTERPRISES, DBA American Ambulance; COMMUNITY AMBULANCE SERVICES, INC.; SIERRA AMBULANCE SERVICE, INC.; CARE AMBULANCE SERVICE, INC.; DELANO AMBULANCE SERVICE, INC.; KERN EMERGENCY MEDICAL | No. 14-56483<br><br>D.C. No.<br><br>2:10-cv-04182-CAS-MAN<br><br><br>OPINION |

TRANSPORTATION CORPORATION,
DBA Kern Ambulance; WESTMED
AMBULANCE, INC.; CALIFORNIA
AMBULANCE ASSOCIATION;
REGIONAL EMERGENCY MEDICAL
SERVICES AUTHORITY; METRO WEST
AMBULANCE SERVICE, INC.,
                    *Plaintiffs-Appellants*,

v.

JENNIFER KENT, Director of the
Department of Health Care Services
of the State of California,
                    *Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted November 7, 2017
Pasadena, California

Filed March 6, 2018

Before: Stephen Reinhardt, Ronald Lee Gilman,*
and Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Gilman

---

* The Honorable Ronald Lee Gilman, United States Circuit Judge
for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Medicaid

The panel affirmed the district court's summary judgment in favor of the Director of the California Department of Health Care Services in an action brought by private ambulance companies, challenging the reimbursement rate for their transportation of patients covered by Medi-Cal, the California Medicaid program.

The reimbursement rate is set by DHCS pursuant to state statutes and regulations that have been approved by the Centers for Medicare and Medicaid Services, the federal agency that administers the Medicaid program on behalf of the Department of Health and Human Services. The ambulance companies alleged that their constitutional rights were violated because they received only 20 cents in reimbursement for every dollar that they spent to transport Medi-Cal patients.

The panel affirmed the district court's summary judgment on the ambulance companies' claim under the Takings Clause. The panel held that the ambulance companies lacked a constitutionally protected property interest in a particular reimbursement rate, but the mandatory-care provision of Cal. Health & Safety Code § 1317(d) implicated a constitutionally protected property right. The panel held that § 1317(d) did not effect a regulatory taking because, under the *Penn Central* test, the ambulance companies did not establish that the statute had

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

more than a negligible economic impact on them, nor that it interfered with their investment-backed expectations, and they did not provide evidence as to the character of the government action at issue.

The panel held that the ambulance companies did not establish a due process claim regarding DHCS's failure to ensure that Medi-Cal reimbursement rates kept pace with their costs because they lacked a constitutionally protected interest in any particular reimbursement rate. Under the rational-basis standard, the ambulance companies did not establish an equal protection violation regarding a supplemental-reimbursement program that favors public over private providers. The ambulance companies also did not establish a claim under the Contract Clause or the Dormant Commerce Clause.

The panel held that there was no procedural error in the district court's grant of summary judgment, and it declined to address claims omitted from the operative complaint.

## COUNSEL

Michael K. Hagemann (argued), and Kevin R. Warren, M.K. Hagemann P.C., Century City, California, for Plaintiffs-Appellants.

Hadara R. Stanton (argued), Deputy Attorney General; Susan M. Carson, Supervising Deputy Attorney General; Julie Weng-Gutierrez, Senior Assistant Attorney General; Office of the Attorney General, San Francisco, California; for Defendant-Appellee.

**OPINION**

GILMAN, Circuit Judge:

California law requires ambulance companies to provide emergency medical transportation irrespective of a patient's ability to pay.  To at least partially offset the cost of providing such transportation, California has an established reimbursement rate for those companies voluntarily enrolled as providers with the state's Medicaid program (Medi-Cal) when they transport Medi-Cal patients.  The relevant reimbursement rate is set by California's Department of Health Care Services (DHCS) pursuant to state statutes and regulations that have been approved by the Centers for Medicare and Medicaid Services (CMS), the federal agency that administers the Medicaid Program on behalf of the Department of Health and Human Services.

At the heart of this case is the Plaintiffs' complaint that private ambulance companies receive only 20 cents in reimbursement for every dollar that they spend to transport Medi-Cal patients, a shortfall that they contend violates their constitutional rights.  After discovery, DHCS moved for summary judgment, which the district court granted on all counts.  The court held that the Plaintiffs had failed to produce sufficient evidence to sustain any of their claims.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

# I. BACKGROUND

## A. Factual background

### 1. Federal Medicaid program

Medicaid is a state-administered program financed jointly by the federal and state governments that provides healthcare coverage to low-income Americans. *See* 42 U.S.C. §§ 1396 *et seq.* The percentage of the program's costs that the federal government covers varies by state, with poorer states receiving a greater share of federal dollars. *See* 42 U.S.C. § 1396d(b). For the fiscal years in question, California bore half the cost of covering its Medicaid population. *See* 80 Fed. Reg. 73,781, tbl. 1 (Nov. 25, 2015). A state can satisfy its share of Medicaid spending both through direct appropriations to state and local Medicaid agencies and by certified Medicaid expenditures incurred by other state and local agencies. 42 C.F.R. § 433.51(a), (b).

In exchange for receiving their allotment of federal funds, states design and administer Medicaid State Plans that must comply with federal Medicaid law. *See* 42 U.S.C. § 1396a. CMS can remedy a state's noncompliance with federal Medicaid law by withholding future funding. 42 U.S.C. § 1396c; *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1385 (2015) ("[T]he sole remedy Congress provided for a State's failure to comply with Medicaid's requirements . . . is the withholding of Medicaid funds by the Secretary of Health and Human Services.").

### 2. Medi-Cal

Entities that enroll as Medi-Cal providers are entitled to reimbursement for the services that they provide to the program's beneficiaries. Cal. Welf. & Inst. Code

§ 14019.3(c), (g).   The Medi-Cal statute stipulates that "payment received from the state in accordance with Medi-Cal fee structures shall constitute payment in full" for services provided.  *Id.* § 14019.3(d).  And when providers enroll in the program, they must sign a Medi-Cal Provider Agreement that contains a condition to the same effect.  Cal. Welf. & Inst. Code § 14043.2(a); Cal. Code Regs. tit. 22, §§ 51000.45, 51200(a), 51501(b); DHCS, Medi-Cal Provider Agreement (DHCS 6208) 5-6 (2017), http://files.medi-cal.ca.gov/pubsdoco/Publications/ masters-other/provappsenroll/02enrollment_DHCS6208.pdf ("[P]ayment received from DHCS in accordance with Medi-Cal fee structures shall constitute payment in full . . . .").

DHCS administers Medi-Cal, and its responsibilities include setting reimbursement rates for covered services. Cal. Welf. & Inst. Code §§ 10740, 14105(a).  In 2003, the agency adopted Attachment 4.19-B to California's State Plan, which sets forth a "methodology" for DHCS to "establish[] payment rates."  State Plan Under Title XIX of Social Security Act: California, attach. 4.19-B, at 1, http://www.dhcs.ca.gov/formsandpubs/laws/Documents/Sta te_Plan_Attachment_4.19B_1–5.pdf.  The procedures set forth in Attachment 4.19-B require DHCS to "develop[] . . . an evidentiary base or rate study" to guide its rate setting, to solicit public input by "present[ing] . . . the proposed rate at a public hearing," and to determine a final reimbursement rate "based on" the aforementioned evidence and public input.  *Id.*

### 3. *Reimbursement for emergency ground-transportation services*

Ambulance companies that operate in California must provide emergency services to any "person . . . in danger of loss of life[] or serious injury or illness" regardless of his or

her ability to pay. Cal. Health & Safety Code § 1317(a), (d). Those ambulance companies that are enrolled as Medi-Cal providers are entitled to at least partial reimbursement— $118.20 for a one-way ride—for the services that they provide when they transport patients who are insured through Medi-Cal. Cal. Welf. & Inst. Code §§ 14019.3(c), (g), 14132(i); Cal. Code Regs. tit. 22, § 51527. According to the Plaintiffs, that reimbursement accounts for only 20% of the actual cost that they incur to transport Medi-Cal beneficiaries, causing them $60 million in annual losses.

DHCS has not promulgated new reimbursement rates for medical-transportation services since adopting Attachment 4.19-B in 2003. Instead, reimbursement rates that predate the Attachment remain in effect. *See* Cal. Code. Regs. tit. 22, § 51527. DHCS adopted those reimbursement rates in 1984 and has amended them several times, most recently in 2002. *Id.* As required by California's Administrative Procedure Act, DHCS held public hearings and provided an opportunity for public comment before enacting § 51527 and each amendment thereto. Cal. Govt. Code §§ 11346.45, .6. One of the Plaintiffs in this case—the California Ambulance Association—participated in those hearings. (A more extensive discussion of the regulation's history is found in *Sierra Med. Servs. All. v. Douglas*, No. B220443, 2011 WL 985520, at *2–*3 (Cal. Ct. App. Mar. 22, 2011) (unpublished).)

California makes supplemental reimbursement available to publicly owned providers of emergency-medical ground transportation (*e.g.*, local fire departments) for up to the actual cost incurred to transport Medi-Cal beneficiaries, but not to private providers like the Plaintiffs. Cal. Welf. & Inst. Code § 14105.94. Recently, California adopted an additional supplemental-reimbursement program (without

repealing the existing one) that is available to both private and public providers of emergency-medical transportation. *See id.* §§ 14129–14129.7.

## B. Procedural background

The Plaintiffs filed this action in the United States District Court for the Central District of California. The operative complaint alleges violation of the Fifth Amendment's Takings Clause, the Fourteenth Amendment's Due Process Clause, the Commerce Clause, and the Contract Clause of the United States Constitution. Plaintiffs also allege that the reimbursement program violates the Equal Protection Clause of the Fourteenth Amendment because public providers of emergency-transportation services are eligible for supplemental Medi-Cal reimbursement that is unavailable to private ambulance companies.

Three of the Plaintiffs were involved in a prior state court action, which was on appeal when this case was filed. *See Sierra Med. Servs. All.*, 2011 WL 985520, at \*1, \*3. The district court held that those plaintiffs could assert only an equal protection claim, because the remaining claims were barred by res judicata. Those Plaintiffs have not appealed that ruling.

DHCS filed its motion for summary judgment in this case after the close of discovery, along with a request (to which the Plaintiffs objected) that the court take judicial notice of several items, including excerpts of California's State Medicaid Plan, state legislation and legislative documents, materials from DHCS's website, administrative records from the public hearings surrounding the adoption and amendment of the Medi-Cal reimbursement rate for medical-transportation services, and the California Court of

Appeal's unpublished decision in the related case of *Sierra Medical Services Alliance v. Douglas*.

The Plaintiffs opposed DHCS's motion for summary judgment, but, before the motion was fully briefed, the district court stayed proceedings in light of the Supreme Court's consideration of a petition for writ of certiorari in another case challenging Medi-Cal's reimbursement rates. *See Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 900 (2014) (mem.). After the Supreme Court denied certiorari in that case, the district court lifted its stay, reopened discovery for a four-month period, and granted the Plaintiffs permission to file a second opposition to DHCS's motion for summary judgment, which they did after conducting additional discovery. After hearing argument, the district court granted DHCS's motion.

## II. ANALYSIS

### A. Standard of review

We review de novo a district court's grant of summary judgment. *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 954 (9th Cir. 2013). "Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (quoting *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where, as here, the party moving for summary judgment is not the party that bears the burden

of proof at trial, it may secure summary judgment by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## B.  Preliminary matters

At the outset, we will briefly address two procedural issues raised by the Plaintiffs on appeal.  First, the Plaintiffs argue that the district court erred by entering judgment for DHCS on purely legal grounds instead of sifting through what the Plaintiffs contend are contrary factual assertions. The Plaintiffs, however, apparently misapprehend the nature of Rule 56 of the Federal Rules of Civil Procedure.  That Rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish existence of an element to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

This litigation languished in the federal district court for five years, and not one, but *two* discovery deadlines elapsed before the court rendered judgment on DHCS's motion.  If, as the court found and as DHCS argues on appeal, the record lacks evidence upon which the Plaintiffs can sustain their claims, then the court properly entered judgment for DHCS.

Second, the Plaintiffs object to DHCS's submission of several public records in conjunction with its motion for summary judgment.  But the district court's opinion does not refer to any of those records, and most of them are readily accessible on government websites.  The exceptions are the California Court of Appeal's unpublished opinion in *Sierra Medical Services Alliance v. Douglas* and the exhibits from

the parties' Joint Appendix in that case. There is no basis for the Plaintiffs to credibly claim that they were unfamiliar with the latter two items, however, because three of the Plaintiffs were themselves parties to the state-court case.

## C. Claims not raised below

We also note that the Plaintiffs raise two substantive claims on appeal that do not appear in their amended complaint, which means that the district court had no opportunity to render judgment on those claims. One of these is the Plaintiffs' renewal of the Supremacy Clause claim that they quite intentionally excluded from their operative, first amended complaint. As stated in their motion to amend, the Plaintiffs amended their initial complaint based on the "belie[f] that their Constitutional claims were stronger than their section (a)(3)(A)/Supremacy Clause claim."

The Plaintiffs waived a Supremacy Clause claim by omitting it from the operative complaint. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that "claims [that are] voluntarily dismissed" are "waived if not repled" in an amended complaint"). And even if the Plaintiffs could renew their Supremacy Clause claim, the Supreme Court's relatively recent decision in *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378 (2015), defeats it. *Id.* at 1383 ("[T]he Supremacy Clause is not the 'source of any federal rights,' and certainly does not create a cause of action." (quoting *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107 (1989))).

Also absent from the Plaintiffs' operative complaint is the argument that several different sections of the Medicaid statute allow for private causes of action. One of the sections—42 U.S.C. § 1396a(a)(30)(A)—was the statutory

basis for their abandoned Supremacy Clause claim. The Plaintiffs have never before asserted claims based on the other Medicaid provisions, and therefore, in the absence of exceptional circumstances not present here, they are precluded from raising those provisions for the first time on appeal. *Fed. Ins. Co. v. Union Pac. R.R. Co.*, 651 F.3d 1175, 1178 (9th Cir. 2011).

## D. Takings Clause

Of the claims that do appear in the Plaintiffs' amended complaint, the most plausible is their Takings Clause claim, which we will now address. The Fifth Amendment's Takings Clause prohibits the taking of "private property . . . for public use, without just compensation." U.S. Const. amend. V. A Takings Clause claim requires proof that the plaintiff "possesses a 'property interest' that is constitutionally protected." *Turnacliff v. Westly*, 546 F.3d 1113, 1118 (9th Cir. 2008) (quoting *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1198 (9th Cir. 1998)).

The district court held that the Plaintiffs lack a constitutionally protected property interest. In doing so, it relied on *Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235 (9th Cir. 2013), in which this court held that "[b]ecause participation in Medicaid is voluntary, . . . providers do not have a property interest in a particular reimbursement rate." *Id.* at 1252.

The Plaintiffs respond by arguing that "[e]ven if . . . [they] don't have a property right in Medicaid reimbursement rates, . . . their ambulances, equipment, wages, supplies, insurance, goodwill, and ambulatory-service and employment contracts . . . are also property rights at issue." But, as the district court noted, the Medi-Cal program does not compel the Plaintiffs to furnish those

resources for public use. The program provides compensation at predetermined rates only to those providers that voluntarily choose to participate.

A separate statute, however, requires providers to render their emergency services "without first questioning the patient or any other person as to his or her ability to pay." Cal. Health & Safety Code § 1317(d). This mandatory-care provision does not stipulate what, if any, compensation that providers are entitled to receive when they render services to Medi-Cal patients or to anyone else. It states only that "after the services are rendered," "the patient or his or her legally responsible relative or guardian shall execute an agreement to pay" for the services "or otherwise supply insurance or credit information." *Id.*

The district court did not analyze whether § 1317(d) effects a taking because it held that the Plaintiffs did not "identify, much less assert a takings claim against, the statute or regulation which obligates them to provide" emergency-transportation services without respect to the patient's ability to pay. To the contrary, however, the Plaintiffs do reference the mandatory-care provision, albeit obliquely, in their amended complaint by alleging that they

> are required by law to respond to all emergency calls and provide emergency treatment and transportation to every Medi-Cal client that requests emergency assistance. [They] cannot choose to decline to treat or transport . . . Medi-Cal clients or even identify them prior to treatment or transport [in order] to have the option of declining to treat or transport them.

And the Plaintiffs' appellate briefing refers to the compulsory effect of § 1317(d) on several occasions. These references to the mandatory-care provision are sufficient to show that the Plaintiffs intended to rely upon § 1317(d) as part of their Takings Clause claim.

The district court also read *Managed Pharmacy Care* for the proposition that "providers cannot state a takings claim even when they are under a legal obligation to provide care." But *Managed Pharmacy Care*'s holding is narrower and more nuanced. The provision at issue in that case prohibits nursing facilities that are enrolled as Medi-Cal providers from withdrawing from the program until all of their "Medi-Cal patients . . . are: (1) transferred to another facility; (2) appropriately discharged; or (3) lose entitlements to Medi-Cal benefits." *California Hospital Association v. Douglas*, No. CV 11-9078 CAS (MANx), 2011 WL 6820229 at \*10 & n.18 (C.D. Cal. Dec. 28, 2011), *rev'd sub nom. Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235 (9th Cir. 2013). By contrast, § 1317(d) applies to all emergency-medical-transportation providers, whether or not they enroll as Medi-Cal providers. And if the Plaintiffs unenrolled as Medi-Cal providers, the provision would continue to apply to them indefinitely, not for just a transitional period of time. Those material differences, along with the Plaintiffs' property interest in their ambulances, equipment, wages, supplies, insurance, goodwill, and ambulatory-service and employment contracts, rather than the reimbursement rate per se, make *Managed Pharmacy Care* inapposite. Accordingly, the district court erred in concluding that the Plaintiffs lack a constitutionally protected property right upon which California law intrudes.

Because of our determination that §1317(d) implicates the Plaintiffs' constitutionally protected property, we must next examine whether the provision effects a taking. "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). But a so-called "regulatory taking" can also occur where "government regulation of private property . . . [is] so onerous that its effect is tantamount to a direct appropriation or ouster." *Id.* If § 1317(d) effects a taking, it is a regulatory one because DHCS does not directly appropriate the Plaintiffs' ambulances or other personal property through the mandatory-care provision. DHCS instead regulates how the Plaintiffs can use their property.

Although real property is the traditional realm of takings law, the Fifth Amendment also protects against the taking of personal property without just compensation. *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2426 (2015) ("Nothing in the text or history of the Takings Clause, or our precedents, suggests that the rule is any different when it comes to appropriation of personal property."). And voluntary participation in a market that is subject to regulation does not defeat a takings claim. *See id.* at 2430–31 (holding that raisin farmers' voluntary decision to participate in the raisin market did not defeat their takings claim against the Department of Agriculture's raisin-reserve requirement). Accordingly, § 1317(d) has the potential to effect a regulatory taking even though the Plaintiffs could avoid the regulation by simply ceasing to operate as ambulance companies.

The Supreme Court has set forth an "ad hoc, factual inquir[y]" for determining whether a regulation amounts to a taking. *Penn Centr. Transp. Co. v. City of New York*,

438 U.S. 104, 124 (1978).  This inquiry analyzes (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the government action."  *Id.*  California's mandatory-care provision constitutes a temporary restriction on Plaintiffs' use of their property, so this balancing test applies.  *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 n.12 (1982).

This presents an insurmountable obstacle to the Plaintiffs because they failed to produce sufficient evidence in support of their takings claim under *Penn Central*.  Starting with the economic-impact factor, the record simply shows that the Plaintiffs operate at a loss when they serve Medi-Cal patients.  But evidence of red ink generated by serving this one segment of California's population tells us nothing about the overall economic impact of § 1317(d).  When pressed on this point at oral argument, counsel was unable to identify any relevant record evidence.  Due to the record's deficiencies, we have no way of knowing the losses that the Plaintiffs in the present case incur as a result of § 1317(d).

Section 1317(d) might in fact have no more than a negligible effect on the Plaintiffs' bottom line, depending on the amount of revenue that the Plaintiffs recoup by transporting non-Medi-Cal patients.  In the analogous case of *Franklin Memorial Hospital v. Harvey*, 575 F.3d 121 (1st Cir. 2009), for example, a hospital brought a Takings Clause challenge to a Maine regulation that required it to provide free, medically necessary, inpatient- and outpatient-hospital services to residents whose incomes are at or below 150% of the federal poverty level.  *Id.* at 123–24 (citing Me. Code R. §§ 1.01(A), 1.02(C)).  Although the regulation caused the hospital to provide free care at an annual cost of hundreds of

thousands of dollars, the First Circuit concluded that the regulation did not amount to a regulatory taking, *id.* at 129, and noted that the amount of free care that the hospital actually provided pursuant to the regulation equaled only 0.51% of the hospital's gross revenue, *id.* at 124.

The record is similarly lacking when it comes to the Plaintiffs' investment-backed expectations, the second *Penn Central* factor. They have not identified any distinct expectations that they had when they entered the emergency-transportation market, let alone provided evidence that § 1317(d) has interfered with those expectations. Nor have the Plaintiffs provided evidence or raised any arguments as to the the character of the government action, the third *Penn Central* factor.

Section 1317(d) also does not fit into either category of *per se* regulatory takings identified by the Supreme Court. It does not require the Plaintiffs "to sacrifice *all* economically beneficial uses" of their property, *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019–20 (1992) (emphasis in original), because neither § 1317(d) nor Medi-Cal places any limit on the rates that the Plaintiffs can charge to non-Medi-Cal patients. And it does not constitute "permanent physical occupation authorized by government," *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 422, 426 (1982), because the Plaintiffs also transport non-Medi-Cal patients.

In sum, the Plaintiffs have not carried their burden of producing evidence upon which "a reasonable jury could return a verdict" in their favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The district court therefore did not err in entering judgment in DHCS's favor on the Takings Clause claim.

**E. Due Process Clause**

Unlike the Plaintiffs' Takings Clause claim, which involves a statutory provision separate and apart from the Medi-Cal statutes and regulations, the Plaintiffs' procedural and substantive due process claims are directed exclusively at DHCS's failure to ensure that Medi-Cal reimbursement rates have kept pace with the Plaintiffs' costs.

Due process claims, like Takings Clause claims, require a "showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994). As discussed above, the Plaintiffs voluntarily participate in Medi-Cal and therefore have no constitutionally protected interest in any particular Medi-Cal reimbursement rate (as opposed to a constitutionally protected interest in their ambulances and other personal property). *See Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1252 (9th Cir. 2013). Their due process claims are therefore without merit.

**F. Equal Protection Clause**

The Plaintiffs concede that their Equal Protection claim must be analyzed under a rational-basis standard. (Although California's adoption of a new program in 2017 that offers supplemental reimbursement for the transportation of Medi-Cal patients, *see* Cal. Welf. & Inst. Code §§ 14129 14129.7, could muddle this analysis, the new program appears to complement rather than replace the supplemental-reimbursement program that is the focus of the Plaintiffs' equal protection claim. *See id.* § 14105.94.) And DHCS has offered a perfectly reasonable justification for a supplemental-reimbursement program that favors public over private providers: payments to public providers count toward the state's share of Medicaid dollars, whereas

payments to private providers do not. *See* 42 C.F.R. § 433.51(a), (b). Steering more Medi-Cal spending toward public providers is therefore in the state's fiscal interest. Accordingly, the supplemental-reimbursement program survives rational-basis review. *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) ("[A] statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.").

## G.  Contract Clause

A Contract Clause claim requires proof that (1) a contractual relationship with the state exists, (2) "a change in law" has occurred that "impairs that contractual relationship," and (3) "the impairment is substantial." *Univ. of Haw. Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1101–02 (9th Cir. 1999) (quoting *Seltzer v. Cochrane*, 104 F.3d 234, 236 (9th Cir. 1996)). The Plaintiffs allege that DHCS's failure to issue updated reimbursement rates substantially impairs their contracts with cities, counties, and special districts that name them as the exclusive or semi-exclusive providers of emergency-medical-transportation services for the localities.

But this is an objection to legislative *inaction*, not to a "change in law." *See id.* at 1101 (quoting *Selzter*, 104 F.3d at 236). Moreover, the Plaintiffs have identified no explicit or even implicit term in their contracts with localities that DHCS has substantially impaired. Their Contract Clause claim therefore fails.

## H. Dormant Commerce Clause

This brings us to the Plaintiffs' final cause of action, the one based on the so-called Dormant Commerce Clause, an implicit aspect of the Commerce Clause that "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013) (quoting *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 98 (1994)). On appeal, the Plaintiffs argue for the first time that the supplemental reimbursements available to public providers discriminate against out-of-state private providers, which they never pleaded in their amended complaint. And even if their amended complaint had alleged that the supplemental-reimbursement program violates the Dormant Commerce Clause, the relevant comparison would be between in-state and out-of-state *public* providers. Because none of the Plaintiffs are out-of-state public providers, they have no standing to challenge the supplemental reimbursements on Dormant Commerce Clause grounds. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Accordingly, their Dormant Commerce Clause claim is without merit.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.