
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>SILVERIO ARENAS, JR. and EMILDA NAVA,<br><br>                  Debtors. | BAP No. WW-21-1056-BGT<br><br>Bk. No. 17-10940-MLB<br><br>Adv. No. 19-01134-MLB |
| SILVERIO ARENAS, JR.,<br>            Appellant,<br>v.<br>JAY INSLEE; ROBERT W. FERGUSON; JOEL SACKS; VICTOR VELAZQUEZ; MAGGIE LELAND; TONYA MORGAN; GARY FRANKLIN, M.D.; LEE GLASS, M.D.; STEPHEN THIELKE, M.D.; JEAN DES ROCHERS; ERNIE LAPALM; DAN JOHNSTON; MONTANA SALVONI; ANGELA EMTER JIMENEZ; VICTORIA KENNEDY; URIEL INIGUEZ; CLAUDIA WATSON; SHELLY MORTINSON; GREGORY SILVEY; LISA GILMAN; LISA VAN DER LUGT,<br>              Appellees. | **MEMORANDUM**\* |

Appeal from the United States Bankruptcy Court
for the Western District of Washington
Marc L. Barreca, Bankruptcy Judge, Presiding

Before: BRAND, GAN, and TAYLOR, Bankruptcy Judges.

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

Appellant, chapter 13[1] debtor Dr. Silverio Arenas, Jr., appeals an order granting appellees' motion for summary judgment as to all of Dr. Arenas's claims. Because Dr. Arenas failed to provide evidence in support of his claims against appellees or to controvert the evidence they submitted in support of summary judgment, we AFFIRM.

**FACTS**

Dr. Arenas is a licensed psychologist practicing in Washington. For over 30 years, he has specialized in treating injured Hispanic workers as a contracted health care provider through the Washington State Department of Labor and Industries ("L&I"), the state's workers compensation program. As a contracted provider through L&I, Dr. Arenas is required to meet certain treatment standards set by L&I and to comply with L&I billing procedures.

**A.      Billing issues, the audit, and Dr. Arenas's tort claim**

In 2014, an L&I claims manager noticed irregularities with Dr. Arenas's billing practices. The claims manager referred the case to his supervisor. After the supervisor confirmed the billing errors, she forwarded the referral for a full audit. The full audit, which reviewed Dr. Arenas's billing records over a two-year period, revealed that L&I had overpaid him $188,351.92. L&I issued an order informing Dr. Arenas of the overpayment and the six specific errors

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

found in his billings.

Dr. Arenas, with counsel, requested and received reconsideration of the audit. The Assistant Attorney General ("AAG") representing L&I in the audit spoke with Dr. Arenas about the billing errors. Dr. Arenas told the AAG that he understood the problems and would correct them. Reconsideration of the audit did not result in any change in the principal amount due. A Final Order was issued.

Dr. Arenas, with counsel, appealed the Final Order to the Board of Industrial Insurance Appeals ("BIIA"). While the BIIA appeal was pending, Dr. Arenas sent a letter to the AAG and the Director of L&I alleging that the audit violated his constitutional rights. Dr. Arenas argued that, because he was Hispanic and was willing to challenge L&I on patient treatment issues for Hispanics, he had been the intentional target of an unfair, oppressive, and harm-intentioned audit. Dr. Arenas also accused L&I of not providing proper procedural due process in the audit action. In response, L&I sent a letter to Dr. Arenas confirming the reasons for the audit and explaining that the audit appeal process protected his right to procedural due process. Investigators from L&I also met with Dr. Arenas to discuss his civil rights allegations and the issues involved in treating Hispanic patients.

Meanwhile, L&I staff attempted to address Dr. Arenas's ongoing billing errors and help bring him into compliance with L&I's procedures. L&I also conducted workshops to provide billing training, which Emilda Nava, Dr. Arenas's wife, attended. At the last workshop, Ms. Nava told an L&I

employee that she understood the billing process but probably would not comply with the billing procedures. L&I also held forums with the Hispanic community to improve its relationship with Hispanic workers. Dr. Arenas and Ms. Nava attended these forums.

Ultimately, the parties mediated Dr. Arenas's civil rights complaint and the audit. They reached an agreement that decreased the overpayment he owed from $188,351.92 to $9,000.00, and resolved his civil rights issues. As part of the settlement, the parties agreed that: (1) Dr. Arenas would remedy the billing errors and dismiss his BIIA appeal; and (2) L&I would provide training to help prevent future billing errors. Despite L&I's best efforts, the billing errors persisted. L&I staff still meet with Dr. Arenas and Ms. Nava to resolve billing issues. During the years before and after the audit, Dr. Arenas made comparable income for his work as a contracted provider for L&I.

In October 2017, Dr. Arenas submitted a "tort claim" to the Washington Office of the Attorney General ("AGO"), which was ultimately dismissed. Soon thereafter, Dr. Arenas faxed documents to the AGO, the governor, some state agencies, and the media concerning other doctors he believed should be investigated for their billing practices. The fax included highly sensitive patient and treatment information, the disclosure of which the AGO believed was a potential HIPAA violation. This resulted in the AGO filing complaints with the Washington Department of Health and the Department of Health and Human Services. Apparently, it was determined that no HIPAA violation occurred, and the case was closed.

**B.    The lawsuit and adversary proceeding**

Dr. Arenas then filed a complaint in federal court against 19 individuals, which he amended to include three additional individuals ("Defendants"). The complaint alleged claims for civil rights violations under 42 U.S.C. §§ 1981, 1983, 1985 & 1986, criminal conspiracy, Title VII discrimination, tortious interference with a business contract, racial harassment, outrage, and wrongful discharge. The Defendants can be categorized into three groups: (1) public officials, including the governor and AG; (2) L&I employees; and (3) individuals representing L&I in the litigation with Dr. Arenas.

The focus of Dr. Arenas's complaint was the 2014 audit by L&I and, to some extent, the HIPAA complaints. It also made a vague reference to a complaint filed by the AGO to the state's licensing board accusing Dr. Arenas of unprofessional conduct. Finally, the complaint alluded to some peer medical evaluation reports that Dr. Arenas alleged were retaliatory and false. Dr. Arenas sought, among other relief, compensatory and punitive damages.

The district court referred the case to the bankruptcy court due to the pending chapter 13 case. Defendants filed their answer, denying generally the allegations in the complaint. After some status conferences, the bankruptcy court issued a trial scheduling order.

Defendants timely filed their motion for summary judgment and supporting declarations ("MSJ"). They argued that summary judgment as to all claims, or even dismissal under Civil Rule 12(b)(6) for some of them, was

5

proper, because Dr. Arenas either failed to plead facts necessary to establish the claim or failed to provide any evidence to show that he was entitled to relief on the claim. Defendants also argued that claims against the state officials in their official capacities were barred by Eleventh Amendment immunity.

Dr. Arenas filed a motion to extend time to file an opposition to the MSJ. He requested an additional 90-180 days to respond, citing the complex nature of the case, his pro se status, and the need for discovery. Defendants opposed the request, arguing that Dr. Arenas had made no efforts to litigate the case and should not be rewarded with a continuance. They noted that, since filing the complaint 16 months earlier, Dr. Arenas had made no attempt to do any discovery.

Though the bankruptcy court determined that Dr. Arenas failed to provide any basis for a continuance given his failure to conduct discovery or to otherwise prosecute the case, it ordered the parties to attend mediation and gave Dr. Arenas an additional 90 days to file an opposition to the MSJ. The court told Dr. Arenas that an opposition to the MSJ was now due on November 19, 2020, and the related hearing was on December 3, 2020.

Dr. Arenas did not file an opposition by the deadline, but the bankruptcy court allowed him to argue at the December 3 hearing. After oral argument, the court struck the trial dates and took the MSJ under submission.

On December 4, after the MSJ hearing, Dr. Arenas filed a "motion for retroactive and further extension of time" to file an opposition to the MSJ. He

6

cited the complex nature of the case and his pro se status as reasons for excusing his late response and allowing a 180-day continuance. Dr. Arenas said he was "in possession of significant amounts of documented information" and that "several witnesses [could] attest to and substantiate [his] assertions" about Defendants. Dr. Arenas did not include copies of the referenced documents or a declaration from himself or the alleged corroborating witnesses.

The bankruptcy court then entered its oral ruling granting the MSJ and dismissing Dr. Arenas's claims. The court noted that, due to the number of claims asserted in the complaint and the lack of any effort to tie the asserted facts to the claims, it was difficult to analyze the issues. It ruled, however, that summary judgment was appropriate because Dr. Arenas failed to contest the evidence provided by Defendants. The court also, alternatively, dismissed some of the claims with prejudice under Civil Rule 12(b)(6).

After the bankruptcy court entered its order granting the MSJ, Dr. Arenas moved for reconsideration of the MSJ order, appointment of counsel, and an additional 90-120 days to present new evidence and file an opposition to the MSJ. He then filed his notice of appeal of the MSJ order, before the bankruptcy court entered its order denying reconsideration and the other requested relief.[2]

---

[2] The bankruptcy court did not enter a separate judgment under Civil Rule 58, applicable here by Rule 7058, but the MSJ order was a "final order" as it contained a full adjudication of the claims at issue and clearly evidenced the judge's intention that it be the court's final act in the matter. *See Key Bar Invs., Inc. v. Cahn (In re Cahn)*, 188 B.R. 627, 629 (9th Cir. BAP 1995).

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.[3]

## ISSUES

1.     Did the bankruptcy court err in granting relief on some of the claims under Civil Rule 12(b)(6)?

2.     Did the bankruptcy court err in granting summary judgment on the remaining claims?

3.     Did the bankruptcy court demonstrate bias?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's grant of a Civil Rule 12(b)(6) motion to dismiss. *Movsesian v. Victoria Versicherung AG*, 629 F.3d 901, 905 (9th Cir. 2010), *on reh'g en banc*, 670 F.3d 1067 (9th Cir. 2012). We review for abuse of discretion the bankruptcy court's decision to dismiss with prejudice. *Harris v. Bank of Am., N.A. (In re Harris)*, BAP No. CC-11-1600-DHKi, 2012 WL 5986534, at *3 (9th Cir. BAP Nov. 29, 2012), *aff'd*, 596 F. App'x 581 (9th Cir. 2015) (citing *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1018 (9th Cir. 2011)). We review de novo the bankruptcy court's grant of summary judgment. *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1221-22 (9th Cir. 2010).

---

[3] The notice of appeal of the MSJ order became effective once the bankruptcy court entered its order denying reconsideration and the other requested relief. *See* Rule 8002(b)(2). However, Dr. Arenas did not file an amended notice of appeal to include the reconsideration order as required for our review of that order under Rule 8002(b)(3). Thus, we are unable to consider that order or Dr. Arenas's arguments with respect to that order.

A bankruptcy court abuses discretion if it applies the wrong legal standard or makes factual findings that are illogical, implausible, or without support in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

**A. The bankruptcy court erred by applying Civil Rule 12(b)(6) to some of the claims but this error was harmless.**

We first consider the bankruptcy court's decision to alternatively dismiss some of the claims under Civil Rule 12(b)(6), applicable here by Rule 7012. Defendants argued in the MSJ that some of the claims could be dismissed for failure to state a claim under Civil Rule 12(b)(6). The court agreed and alternatively dismissed some of the claims with prejudice, including the Title 18 claims, the claims under 42 U.S.C. §§ 2000d and 2000e, and the wrongful discharge claim. However, Defendants had already filed an answer before filing the MSJ.

A Civil Rule 12(b)(6) motion must be made before the responsive pleading. *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004). An answer to a complaint is a responsive pleading. Civil Rule 7(a)(2); Rule 7007. Therefore, relief under Civil Rule 12(b)(6) was foreclosed, and the bankruptcy court erred in dismissing these claims under that rule. It should have treated the motion as one for judgment on the pleadings under Civil Rule 12(c) or (h)(2), which provide that a motion for failure to state a claim

9

can be raised as late as trial.[4] *Elvig*, 375 F.3d at 954.

In any event, the bankruptcy court's error here was harmless. These claims, as pled, would not have survived a motion for judgment on the pleadings under Civil Rule 12(c) and (h)(2). Further, any amendment of these claims would have been futile. *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (dismissal without leave to amend is proper if the complaint could not be saved by any amendment).

Title 18 concerns Federal criminal statutes which are prosecuted by the U.S. Attorney, not by civil litigants, and there is no private right of action under Dr. Arenas's suggested provisions of §§ 2, 241, or 245. Further, the bankruptcy court lacks jurisdiction over criminal matters. *See* 28 U.S.C. § 1334(a) & (b). The 42 U.S.C. § 2000d claim – prohibiting race, color, and national origin discrimination in "any program or activity receiving Federal financial assistance" – failed because Title VI is not intended to reach discrimination in employment practices, which is what Dr. Arenas's suit concerned, and he is not an employee of L&I. *See Johnson v. Transp. Agency*, 480 U.S. 616, 628 n.6 (1987).[5] Similarly, the 42 U.S.C. § 2000e claim, which

---

[4] Civil Rule 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Civil Rule 12(h)(2) provides: "Failure to state a claim upon which relief can be granted . . . may be raised . . . (B) by a motion under [Civil] Rule 12(c), or (C) at trial."

[5] Even if Dr. Arenas's claim under § 2000d could have been amended, he neither alleged nor established on summary judgment that L&I receives Federal financial assistance and would be subject to Title VI. He also failed to provide any evidence on summary judgment that Defendants engaged in "intentional discrimination" or controvert their evidence that they did not. *See Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) (confirming that private individuals cannot recover compensatory damages under Title VI

does concern employment discrimination, failed because Dr. Arenas is not an employee of L&I and did not file a complaint with the EEOC before filing his complaint in the district court, a prerequisite for relief. *See* § 2000e-5(e)(1), (f)(1). Finally, the wrongful discharge claim failed because Dr. Arenas is not an employee of L&I and he was not discharged. He remains a contracted provider treating patients for L&I.

Accordingly, the bankruptcy court did not err in dismissing these claims or abuse its discretion in dismissing them with prejudice.

**B.     The bankruptcy court did not err in granting the MSJ.**

To succeed on a motion for summary judgment under Civil Rule 56, made applicable to adversary proceedings by Rule 7056, the movant must establish the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Sierra Med. Servs. All. v. Kent*, 883 F.3d 1216, 1222 (9th Cir. 2018). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party must support its motion with credible evidence, as defined in Civil Rule 56(c), which would entitle it to a directed verdict if not controverted at trial. *Aubrey v. Thomas (In re Aubrey)*, 111 B.R. 268, 272 (9th Cir. BAP 1990). The adverse party cannot rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Id.* If the adverse party fails to address the movant's

---

except for intentional discrimination).

11

assertion of fact, the court may consider the fact undisputed for purposes of the summary judgment motion. Civil Rule 56(e)(2). Entry of summary judgment is required "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Dr. Arenas does not assert a cogent argument for how the bankruptcy court erred in granting summary judgment on the claims under 42 U.S.C. §§ 1981, 1983, 1985 and 1986, and his state law claims for tortious interference with a business contract, outrage, and racial discrimination in employment. We conclude that Defendants were entitled to summary judgment. Dr. Arenas failed to submit any evidence whatsoever in support of these claims – not a declaration, not a document, nothing. On the other hand, Defendants offered multiple declarations and other documents controverting the alleged wrongful conduct necessary to establish any of these claims.

The uncontroverted evidence established that the 2014 audit was initiated due to billing irregularities; it was not done for discriminatory reasons, and it was not undertaken as retaliation for protected activity. The uncontroverted evidence also established that the BIIA and mediation procedures were proper and that the mediation resulted in a significant reduction to the amount Dr. Arenas owed L&I. Further, L&I upheld its end of the settlement by providing Dr. Arenas and Ms. Nava with additional billing training. The uncontroverted evidence also showed that no individual

engaged in any discriminatory or extreme or outrageous conduct in the 2014 audit, the BIIA appeal, the L&I mediation, the HIPAA complaints, and the peer medical reviews, and that no individual ever referred to Dr. Arenas as "Osama bin Laden."

In short, Dr. Arenas failed to provide evidence to support at least one (if not more) of the essential elements for each of the claims as required by Civil Rule 56(c), or the claim was disproved by unopposed evidence from Defendants permitting summary judgment in their favor under Civil Rule 56(e)(3). Despite his pro se status, Dr. Arenas was still expected to comply with the procedural rules for summary judgment – i.e., to establish through admissible evidence a genuine issue for trial. *See Clinton v. Deutsche Bank Nat'l Tr. Co. (In re Clinton)*, 449 B.R. 79, 83 (9th Cir. BAP 2011) (pro se litigants in bankruptcy proceedings are not excused from compliance with procedural rules). It was not sufficient for Dr. Arenas to rest on allegations or denials in his pleadings to overcome the facts established by Defendants. Therefore, the bankruptcy court did not err in granting summary judgment to Defendants on these claims.

C.    **Dr. Arenas has not demonstrated bias by the bankruptcy court.**

Dr. Arenas argues that the bankruptcy court demonstrated "possible" judicial bias against him. He asserts that his arguments were not fairly considered at the status conferences, and that he was treated "in a demonstratively shortened, pressured, egregious, and hostile manner."

An individual alleging judicial bias has an exceptionally heavy burden and must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). Dr. Arenas failed to meet his heavy burden. He has not identified anything in the transcripts from the status conferences (or the MSJ hearing) that reasonably raises a question regarding the bankruptcy court's impartiality or impropriety. Our review of the transcripts shows that the bankruptcy court did not engage in any of the conduct Dr. Arenas alleges. At each status conference the court carefully explained procedural matters to Dr. Arenas. It also granted Dr. Arenas an initial 90-day extension to file an opposition to the MSJ, despite his failure to provide a meritorious reason for one. The court also allowed Dr. Arenas to argue extensively at the MSJ hearing even though he failed to file a timely opposition, and it considered his untimely opposition filed on December 4 before ruling on the MSJ. Put simply, Dr. Arenas's claims of bias are wholly without merit.

## CONCLUSION

For the reasons stated above, we AFFIRM.

14