**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re:<br>FRANK DANIEL KRESOCK,<br>　　　　　　　Debtor. | BAP No.  AZ-20-1270-BSL<br><br>Bk. No.  0:16-bk-08631-BMW |
| FRANK DANIEL KRESOCK,<br>　　　　　　　Appellant,<br>v.<br>UNITED STATES TRUSTEE,<br>　　　　　　　Appellee. | Adv. No.  0:19-ap-00091-BMW<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Arizona
Brenda Moody Whinery, Chief Bankruptcy Judge, Presiding

Before: BRAND, SPRAKER, and LAFFERTY, Bankruptcy Judges.

**INTRODUCTION**

Appellant, chapter 7[1] debtor Dr. Frank Daniel Kresock, appeals an

order granting the United States Trustee ("UST") summary judgment and

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil

1

denying Dr. Kresock's discharge under § 727(a)(3) and (a)(4)(A). Given the amount of uncontroverted evidence that Dr. Kresock failed to keep or maintain financial records, falsified a court order, and made false oaths in connection with his bankruptcy case, the bankruptcy court did not err in granting the UST summary judgment and denying Dr. Kresock's discharge. We AFFIRM.

## FACTS

### A.   Background

Dr. Kresock is a cardiologist and the sole owner and operator of his medical practice, The Cardiovascular Center, LLC ("CVC"), which has been in operation since 2009. Dr. Kresock did not pay himself wages or a salary from CVC. Instead, CVC paid all of his personal expenses.

Ms. Janine Smith is Dr. Kresock's girlfriend. Since 2009, she has lived with Dr. Kresock and worked at CVC. Ms. Smith is not paid a salary from CVC, but Dr. Kresock pays all of her expenses, including the mortgage interest payments (not disclosed) on four homes titled in her name. For at least six years prior to his bankruptcy, from 2010 to 2015, Dr. Kresock gave Ms. Smith annual gifts of $100,000 and had his CPA prepare gift tax returns to reflect these gifts.

---

Procedure.

**B.      Efforts to obtain Dr. Kresock's financial information and conversion to chapter 7**

Dr. Kresock filed a chapter 11 bankruptcy case on July 27, 2016. Over the first 20 months of the case, the UST, the Arizona Department of Revenue ("ADOR"), and the Internal Revenue Service ("IRS") undertook significant efforts in trying to obtain financial information and records from Dr. Kresock. Dr. Kresock failed to respond in any meaningful way despite multiple requests for information and documents, three motions to compel, seven hearings, court orders, and threats of sanctions. Most of the documents necessary to assess his financial condition and business transactions had to be subpoenaed from third parties. Dr. Kresock's case was converted to chapter 7 for failure to comply with an order granting the UST's motion to compel, failure to timely file operating reports, failure to timely provide information reasonably requested by the UST, and failure to timely file tax returns.[2]

In its litigation with Dr. Kresock, the ADOR requested that he produce a journal or spreadsheet of any transfers: (a) made by CVC to or on behalf of Ms. Smith; (b) made by him to or on behalf of Ms. Smith; and (c) made by CVC to or on behalf of Dr. Kresock; with an explanation of each transfer, for the periods from January 1, 2010 to December 31, 2015. In response, Dr. Kresock stated that he could not produce what the ADOR requested because

---

[2] As of the petition date, Dr. Kresock had not filed federal or state income tax returns for years 2010 through 2015. His CPA prepared the tax returns for 2010 through 2013 in 2014, but they were not filed. The CPA prepared the 2014 and 2015 returns in late 2016 or early 2017, after Dr. Kresock filed for bankruptcy.

3

he did not keep, and did not have, a spreadsheet or journal that listed any such transfers.

Dr. Kresock objected to the IRS's proof of claim which, in part, asserted a claim for income taxes related to 2007. In his objection, Dr. Kresock asserted that he was not required to file a tax return in 2007, based on an agreement between Dr. Kresock and the Federal government.

During discovery, the IRS reviewed Dr. Kresock's federal tax returns for 2011 through 2015 and questioned their accuracy. Dr. Kresock reported that he had no taxable income for each of those years. The IRS maintained that the income representations were implausible; the amount Dr. Kresock paid in mortgage interest alone greatly exceeded his reported net income. Based upon Dr. Kresock's stated income, argued the IRS, it was impossible for him to have purchased the numerous homes, vehicles, boats, and other personal property that were listed in his schedules.

The IRS ultimately conducted an audit of Dr. Kresock. In part, the IRS requested from Dr. Kresock a general ledger, copies of all bank statements, mortgage statements and checks, documents to substantiate his business expenses, and schedules of all transfers between CVC, Dr. Kresock, and Ms. Smith. The documents Dr. Kresock finally produced were limited and incomplete, in particular, they were insufficient to substantiate the business expenses he claimed on his tax returns. During the IRS's deposition of Dr. Kresock, he refused to answer nearly every question, and instead invoked his Fifth Amendment right against self-incrimination.

After completing its audit, the IRS determined that Dr. Kresock owed $2,293,059.32 and filed an amended proof of claim for that amount. The IRS then moved for summary judgment to reduce Dr. Kresock's federal tax liability to judgment. Over Dr. Kresock's objection, the court granted the motion, allowing the IRS's amended claim. The court found that Dr. Kresock had not substantiated many of his business expenses or kept good records, and that the subpoenaed records obtained from the billing service for CVC provided the most reliable source of income information. Dr. Kresock did not appeal the IRS judgment.

## C. The criminal judgment

On no fewer than eight occasions, and on at least one occasion under oath at his § 341(a) meeting, Dr. Kresock, either through counsel or acting on his own behalf, represented to the court, the UST, and creditors that he was not required to file income tax returns as a condition of his probation.[3] To support his assertion, Dr. Kresock filed a copy of a portion of the document he maintained relieved him of his tax filing obligation – an excerpt from his criminal judgment. The excerpt listed six conditions of supervision numbered 14 through 19. Dr. Kresock cited to condition number 19 ("Condition 19") in support of his position, which provided: "the defendant is to pay federal and state income tax at the estimated statutory rate but is not required to file a federal or state income tax return."

---

[3] In 2000, Dr. Kresock was convicted on felony counts of various tax crimes for which he served a prison sentence. The terms of probation stem from this conviction.

The UST asserted that Condition 19 was added by Dr. Kresock: it was in a type font that differed from the type font of the other conditions on the page; the semi-colon at the end of condition number 18 appeared to have been handwritten; and Condition 19 was the only condition that used "is to" rather than "shall" to convey a directive. Scott Reardon, Dr. Kresock's probation officer, who reviewed the criminal judgment with Dr. Kresock and signed it in 2004, testified that, while his signature did appear on the document, Dr. Kresock's excerpt of the criminal judgment was falsified. The certified copy of the criminal judgment submitted by the IRS did not contain Condition 19. Mr. Reardon believed that Condition 19 was added after he signed the criminal judgment. Mr. Reardon stated that, as a probation officer, he could not and would not have added any additional conditions of supervision to the criminal judgment, and that in his 20 years on the job, no one under his supervision was relieved of the obligation to file income tax returns as a condition of supervision.

Dr. Kresock maintained that he did not alter the criminal judgment. He asserted that the presiding judge made many deletions and additions to the criminal judgment between 2000 and 2004, and that the judge added Condition 19 because Dr. Kresock was in a tax dispute with the IRS and the judge "did not want to monitor" the tax issues. No amended versions of the criminal judgment were on the district court docket to corroborate Dr. Kresock's statements, and he submitted none. When asked at his deposition

whether he forged the criminal judgment, Dr. Kresock invoked his Fifth Amendment right against self-incrimination and refused to answer.

**D.    Hummer bill of sale**

After the case was converted, the chapter 7 trustee ("Trustee") filed a motion to compel Dr. Kresock to turn over an undisclosed vehicle identified as a green Hummer, which Trustee discovered in a garage on one of Dr. Kresock's properties. Dr. Kresock maintained that he did not list the green Hummer or turn it over to Trustee because he acquired it postpetition in 2017, so it was not property of the estate.

To verify the purchase date for the green Hummer, Trustee asked Dr. Kresock to produce a copy of the title. Dr. Kresock filed a copy of the bill of sale which was faded and mostly illegible, but appeared to indicate that the purchase date was February 26, 2017. Because it was so difficult to read, the UST (assisting Trustee) obtained and filed a legible copy of the bill of sale from the dealership that sold the vehicle to Dr. Kresock. The legible bill of sale showed that the green Hummer was purchased on February 26, 2011, five years before the bankruptcy case was filed. The UST suggested that Dr. Kresock had submitted an altered bill of sale. In Dr. Kresock's version, noted the UST, it appeared that a horizontal line had been hand drawn at the top of the second typewritten "1" in 2011 to make it look like a "7" and lead a reader to believe the purchase date was in 2017. The bankruptcy court granted Trustee's motion to compel turnover of the green Hummer.

**E. Representations in Dr. Kresock's bankruptcy papers**

Dr. Kresock's Schedules and Statement of Financial Affairs ("SOFA") filed on the petition date were extraordinarily detailed, as were later amended versions thereof. Dr. Kresock said he reviewed his Schedules, SOFA, and Chapter 11 Statement of Current Monthly Income ("CMI Statement") and any amended versions thereof before filing them, attested that each document was true and correct, and signed each document under penalty of perjury. He also confirmed at the § 341(a) meeting that the documents were true and complete. However, when asked later at his deposition if his attorney had told him about the importance of disclosing all assets and whether he had listed them all, Dr. Kresock invoked his Fifth Amendment right against self-incrimination and refused to answer. Dr. Kresock told the bankruptcy court at a later hearing that if he did not disclose a prepetition asset or hold title to a prepetition asset, the asset did not become property of the estate.

Dr. Kresock represented in question no. 4 in his SOFA and amended SOFA that CVC's gross income for 2014 and 2015 was $181,600.40 and $184,400.40, respectively, and that CVC had gross income of $54,119.05 for the first six months of 2016. However, in recreating the financial records for CVC and conducting an income analysis, the IRS determined that Dr. Kresock's actual gross income from CVC was in excess of three times the amounts he listed. Based on account information furnished by the billing service for CVC, which the court had already found was a reliable source, CVC's gross income

8

was $672,028 for 2014 and $593,269.19 for 2015, and during the first six months of 2016, CVC had gross income of $229,295.47. Dr. Kresock did not dispute that the income he reported on the SOFA and amended SOFA was inaccurate.

In the CMI Statement, which required Dr. Kresock to calculate and disclose his average monthly income for the first six months of 2016, Dr. Kresock represented that CVC had gross receipts of $0.00, necessary operating expenses of $0.00, and net monthly income of $0.00. But, as noted above, CVC had gross income of $229,295.47 during that period. When asked about the accuracy of the reported $0.00 figures, Dr. Kresock invoked his Fifth Amendment right against self-incrimination and refused to answer.

In question no. 13 of his SOFA and amended SOFA, Dr. Kresock checked the box indicating that within the two years preceding the petition date he had made no gifts totaling more than $600 per person. At the § 341(a) meeting, Dr. Kresock confirmed under oath that he had not gifted anything with a value of $250 or more to anyone in the 12 months prior to the petition date. However, since at least 2010, and until at least 2015, Dr. Kresock had given Ms. Smith annual gifts of $100,000. Dr. Kresock did not dispute this. Further, he directed his CPA to prepare gift tax returns consistent with $100,000 in annual gifts to Ms. Smith. Dr. Kresock also failed to disclose three open and active bank accounts at Washington Federal containing several thousand dollars collectively in any Schedule B.

9

During the case, Dr. Kresock filed an objection to an auction sale in which he objected to Trustee's seizure and/or accounting of several items of personal property, some of which had significant value. Dr. Kresock did not list any of these items on his Schedules or SOFAs, nor did he allege that any of these items were acquired postpetition such that they did not constitute property of the estate. In addition, Trustee filed reports of sale for the sale of a 1994 Ford Aerostar Van for $1,600 and a 1994 Chevrolet G20 Van for $2,100, vehicles which Dr. Kresock did not disclose.

## F.    UST's complaint to deny discharge and motion for summary judgment

The UST filed a complaint seeking to deny Dr. Kresock's discharge under § 727(a)(2), (a)(3), (a)(4)(A), and (a)(5). Only the § 727(a)(3) and (a)(4)(A) claims are at issue.

Dr. Kresock filed his answer wherein he made various admissions and denials. Among other things, Dr. Kresock denied ever making statements to the court that he was not required to file income tax returns, and he blamed one of his former attorneys for any negligence in that regard. He denied attesting to the accuracy of his Schedules, SOFAs, and CMI Statement although that was undisputed, and he blamed his former attorneys for any mistakes in the documents. Dr. Kresock admitted that he "was a highly educated professional who engaged in complex transactions involving millions of dollars of assets," that given "his education and business history, [he] had the sophistication and forethought to maintain proper

10

documentation of his financial affairs," and that "to complete its audit, the IRS was required to subpoena third parties in order to obtain financial information in an attempt to recreate [his] financial records." Dr. Kresock admitted that the "IRS reviewed well over 10,000 documents in its audit . . . including bank statements, cancelled checks, and deposit slips subpoenaed from the several banks in which CVC, Dr. Kresock, and Ms. Smith did business."

The UST then moved for summary judgment ("MSJ") on its claims under § 727(a)(3) and (a)(4)(A), arguing that Dr. Kresock had: (1) unjustifiably failed to keep or preserve records from which his financial condition or business transactions might be ascertained; (2) unjustifiably falsified a document and submitted it to the court to conceal his financial condition and business transactions; and (3) knowingly and fraudulently made numerous false oaths. The MSJ was supported by a statement of undisputed facts, declarations, hearing and deposition transcripts, and exhibits.

Dr. Kresock opposed the MSJ. Although he included some exhibits with his opposition, he did not file a controverting statement of facts or any affidavits to support or provide a foundation for his exhibits. Nonetheless, the bankruptcy court considered the factual allegations in his opposition. Dr. Kresock acknowledged that it was his burden to show the existence of a genuine dispute of material fact and argued: (1) third parties maintained his records; (2) he maintained sufficient records for purposes of § 727(a)(3);

11

(3) any failure by him to keep or preserve records was justified because he lacked accounting knowledge and he paid third-party professionals to keep and preserve them; and (4) he did not falsify the excerpt of the criminal judgment he submitted to the court.

After a hearing at which Dr. Kresock appeared and presented his opposition, the bankruptcy court entered its Memorandum Decision and Judgment granting the MSJ and denying Dr. Kresock's discharge under § 727(a)(3) and (a)(4)(A). This timely appeal followed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.[4]

## ISSUES

1. Did the bankruptcy court err in granting summary judgment and denying Dr. Kresock's discharge under § 727(a)(3)?

2. Did the bankruptcy court err in granting summary judgment and denying Dr. Kresock's discharge under § 727(a)(4)(A)?

## STANDARD OF REVIEW

We review de novo the bankruptcy court's summary judgment ruling. *Salven v. Galli (In re Pass)*, 553 B.R. 749, 756 (9th Cir. BAP 2016). Viewing the evidence in the light most favorable to the non-moving party, we must

---

[4] The original judgment on appeal did not dispose of the UST's claims under § 727(a)(2) and (a)(5). Post-appeal, the bankruptcy court entered an order and amended judgment certifying under Civil Rule 54(b), applicable in adversary proceedings via Rule 7054, that there was no just reason to delay entry of a final judgment as to the UST's claims under § 727(a)(3) and (a)(4)(A). Therefore, we have jurisdiction over this appeal.

determine whether the bankruptcy court correctly found that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. Civil Rule 56(c), applicable in adversary proceedings via Rule 7056.

## DISCUSSION

Dr. Kresock does not challenge the legal standards applied by the bankruptcy court. Nor does he identify any material fact that he argues is genuinely disputed. He argues that his former attorneys are to blame for the numerous errors and omissions in his bankruptcy papers, and that the bankruptcy court erred by considering the declaratory testimony from Mr. Reardon about the criminal judgment. We address these arguments, and the merits of the court's decision, below.

### A.    Summary judgment standards

To succeed on a motion for summary judgment under Civil Rule 56, the movant must establish the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Sierra Med. Servs. All. v. Kent*, 883 F.3d 1216, 1222 (9th Cir. 2018). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not

13

lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (cleaned up). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* In deciding whether to grant or deny summary judgment, the court can consider not only the cited materials, but also other materials in the record. Civil Rule 56(c)(3).

**B.  The bankruptcy court did not err in granting summary judgment and denying Dr. Kresock's discharge under § 727(a)(3).**

**1.  Law governing § 727(a)(3)**

Under § 727(a)(3), a debtor is not entitled to a chapter 7 discharge if he "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]"

The purpose of § 727(a)(3) is to make discharge dependent on the debtor's true presentation of his or her financial affairs, and complete disclosure is a condition precedent to the granting of the discharge. *Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761-62 (9th Cir. 2008). Section 727(a)(3) imposes on the debtor an affirmative duty to create books and records that accurately document business affairs. *Id.* at 762. While

14

absolute completeness in making or keeping records is not required, the statute does require the debtor to present sufficient written evidence so that creditors can reasonably ascertain the debtor's present financial condition and follow the debtor's business transactions for a reasonable period in the past. *Id.* at 761. When the debtor is sophisticated and engages in a business that involves substantial assets, the debtor's duty to keep and preserve records is even greater. *Id.* at 762.

A party can establish a prima facie case under § 727(a)(3) by showing "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Id.* at 761 (cleaned up). "After showing inadequate or nonexistent records, the burden of proof then shifts to the debtor to justify the inadequacy or nonexistence of the records." *Id.* (cleaned up).

### 2. Analysis

The UST asserted that Dr. Kresock's discharge should be denied under § 727(a)(3) on two independent bases: (1) the failure to keep or maintain records; and (2) falsifying a court order as a means to conceal his financial condition and business transactions. The bankruptcy court granted summary judgment as to both.

### a. The failure to keep or maintain records

The UST, the ADOR, and the IRS expended significant time and effort attempting to obtain basic financial records from Dr. Kresock, such as bank

statements and account ledgers. He failed to cooperate. Initial attempts to get his financial records were met with silence or excuses. After three motions to compel, numerous court orders, and threats of sanctions, Dr. Kresock still did not provide sufficient records from which his financial condition or business transactions could be ascertained. Further, the court had already found in the IRS claim matter, which was not appealed, that Dr. Kresock did not keep good records or substantiate many of his business records.

Dr. Kresock, as the sole member of CVC from which he derives all of his income, admitted that for the five years preceding his bankruptcy filing he did not maintain records of the transfers made from CVC to him or on his behalf, or from CVC to or on behalf of Ms. Smith. The transfers to Ms. Smith alone would have consisted of hundreds of thousands of dollars given the multiple mortgages and other living expenses and generous annual gifts. The transfer of substantial amounts of money to a third party, without documentation, establishes a prima facie violation of § 727(a)(3). *In re Caneva*, 550 F.3d at 762. Ironically, Dr. Kresock admitted that "he was a highly educated professional" who "had the sophistication and forethought to maintain proper documentation of his financial affairs."

Dr. Kresock said he relied on third parties to maintain his financial records for him, but he did not submit any admissible evidence to support this. His CPA testified that the accounting firm did not retain any books furnished by Dr. Kresock. Dr. Kresock also asserted that he turned over all necessary receipts and financial data to his CPA, but the CPA testified that all

16

Dr. Kresock produced for preparation of the tax returns was a billing statement and handwritten notes providing business income and expenses; Dr. Kresock did not provide the CPA with any receipts to support his business expenses, even when the CPA asked for them. In any case, the duty was on Dr. Kresock, not his CPA, to keep and maintain records.

Because of Dr. Kresock's noncompliance and inadequate record keeping, parties in interest were admittedly forced to subpoena third parties to acquire documents that would allow them to ascertain or attempt to recreate Dr. Kresock's financial dealings. While Dr. Kresock did produce some documents, there was no genuine dispute of material fact that the records he produced were inadequate.

Since the UST showed that no genuine disputes of material fact existed as to its prima facie case, the burden shifted to Dr. Kresock to present evidence sufficient to show that a question of material fact existed as to whether his failure to keep or preserve the records was justified under the circumstances. *In re Caneva*, 550 F.3d at 762-63. Whether the debtor was justified in failing to keep or preserve records depends on whether others in like circumstances would ordinarily keep or preserve such records. *Id.* at 763. If so, then the justification must indicate that unusual circumstances absolved the debtor from the duty to maintain records himself. *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1297 (9th Cir. 1994).

Besides his unsupported (and controverted) assertion that third parties maintained his financial records for him, all Dr. Kresock argued here was that

he gave a "true representation" of his financial affairs, but the government chose not to accept it in the form provided. However, what records Dr. Kresock provided were wholly inadequate. The bankruptcy court found that, in justifying his lack of records, Dr. Kresock submitted only conclusory, self-serving, unsupported statements, and that none of his assertions suggested that any unusual circumstances existed to justify his actions and failures.

Based on the record, the bankruptcy court determined that the UST was entitled to summary judgment on its claim under § 727(a)(3) on the basis that Dr. Kresock failed to keep or preserve recorded information from which his financial condition and business transactions might be ascertained, and did not demonstrate that a question of material fact existed as to whether his failure to keep and preserve such information was justified. We see no error in that determination.

### b. Falsifying a court order

Mr. Reardon, Dr. Kresock's former probation officer, testified that the excerpt of the criminal judgment Dr. Kresock filed with the court was falsified. Dr. Kresock filed no admissible evidence that controverted the UST's statements of fact about the criminal judgment or controverted Mr. Reardon's testimony. In opposition to the MSJ, Dr. Kresock asserted that the presiding judge amended the criminal judgment to add Condition 19 because the judge "did not want to monitor" Dr. Kresock's tax issues. This is highly unlikely given that Dr. Kresock had been convicted for attempted tax evasion.

18

Further, that a federal judge could waive a party's obligation to file state income tax returns is implausible.

The bankruptcy court viewed Dr. Kresock's unsubstantiated version of events explaining the reason for the alleged amended criminal judgment, of which only Dr. Kresock had a copy, as "utterly discredited by the record" and did not create a genuine issue of material fact. The falsified version submitted by Dr. Kresock pertained to his financial condition and business transactions, and such alteration and falsification could under no reasonable circumstances have been justified. As a result, the court determined that the UST was also entitled to summary judgment on its claim under § 727(a)(3) on the basis that Dr. Kresock submitted a falsified record to the court and interested parties that, as falsified, purported to impact his financial condition and business transactions. We see no error in that determination.

Dr. Kresock argues that the bankruptcy court erred by considering Mr. Reardon's declaratory testimony because he did not have the opportunity to cross examine him and because the declaration was hearsay. Dr. Kresock never challenged Mr. Reardon's declaration, and thus his argument would appear forfeited. *See Robinson v. Am. Home Mortg. Servicing, Inc. (In re Mortg. Elec. Registration Sys., Inc.)*, 754 F.3d 772, 780 (9th Cir. 2014) (generally arguments not raised in the trial court will not be considered for the first time on appeal). In any case, Dr. Kresock's questions regarding Mr. Reardon's declaration are insufficient to create genuine issues of material fact that would preclude the denial of his discharge on this ground. Additionally, the

statements in Mr. Reardon's declaration were not hearsay because they were based upon his personal knowledge, as required by Civil Rule 56(c)(4). Even without the benefit of Mr. Reardon's testimony, other evidence such as the certified copy of the criminal judgment and the absence of Dr. Kresock's version on the docket supported the conclusion that the criminal judgment had been falsified.

Accordingly, the bankruptcy court did not err in granting the UST summary judgment and denying Dr. Kresock's discharge under § 727(a)(3).

**C.    The bankruptcy court did not err in granting summary judgment and denying Dr. Kresock's discharge under § 727(a)(4)(A).**

**1.    Law governing § 727(a)(4)(A)**

Under § 727(a)(4)(A), a chapter 7 debtor is not entitled to discharge if he "knowingly and fraudulently, in or in connection with the case, made a false oath or account[.]"

To prevail on a § 727(a)(4)(A) claim, "a plaintiff must show, by a preponderance of the evidence, that: '(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently.'" *In re Retz*, 606 F.3d at 1197 (quoting *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005), *aff'd sub nom., Erhard v. Roberts (In re Roberts)*, 241 F. App'x 420 (9th Cir. 2007)). "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to

conduct costly investigations." *Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58, 63 (9th Cir. BAP 1999).

## 2. Analysis

The UST asserted that Dr. Kresock's discharge should be denied under § 727(a)(4)(A), on the basis that he knowingly made numerous material false statements and omissions pertaining to his financial affairs with an intent to deceive, and he actively tried to conceal the truth from interested parties. Dr. Kresock argued that he completed his bankruptcy papers to the best of his ability and that he did not have the requisite intent.

### a. False oath

"A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath." *Khalil v. Devs. Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (9th Cir. BAP 2007), *aff'd*, 578 F.3d 1167 (9th Cir. 2009); *see also In re Wills*, 243 B.R. at 62. "A false oath is complete when made." *Searles v. Riley (In re Searles)*, 317 B.R. 368, 377 (9th Cir. BAP 2004), *aff'd*, 212 F. App'x 589 (9th Cir. 2006).

Dr. Kresock did not dispute omitting personal property from his Schedules, significantly understating CVC's gross income for 2014, 2015, and 2016 on his SOFAs, and omitting substantial gifts he made to Ms. Smith on his SOFAs and at his § 341(a) meeting. Dr. Kresock said he had an inadequate amount of time to prepare his bankruptcy papers properly, and that it was unreasonable for him to be expected to recall everything he owned. The Schedules and SOFAs were extraordinarily detailed and clearly took a

21

considerable amount of time to complete; they could not have been done "willy-nilly in the eleventh hour" as Dr. Kresock contended. Thus, any inference that these were honest mistakes is blatantly contradicted by the record. *Scott*, 550 U.S. at 380. Further, this does not explain away Dr. Kresock's statements at his § 341(a) meeting regarding gifts.

Based on these undisputed facts, the bankruptcy court did not err in determining that Dr. Kresock made false oaths in connection with his case.

### b.     False oath related to a material fact

For purposes of § 727(a)(4)(A), the relevant false oath must relate to a material fact. *In re Retz*, 606 F.3d at 1198. "A fact is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *Id.* (cleaned up). The bankruptcy court determined that Dr. Kresock's misstatements and omissions were material because they related directly to his assets and property, and detrimentally affected Trustee's ability to efficiently administer the estate. We see no error in the bankruptcy court's determination that the false oaths were material.

### c.     False oath was made knowingly

"A debtor 'acts knowingly if he or she acts deliberately and consciously.'" *Id.* (quoting *In re Khalil*, 379 B.R. at 173). A debtor may act knowingly if the debtor "deliberately and consciously signs the schedules and statements declaring that they are true and correct, and subsequently affirms the schedules and statements knowing that they are incomplete." *United*

*States Tr. v. Anthonys (In re Anthonys)*, 539 B.R. 820, 832 (Bankr. D. Alaska 2015) (citing *In re Retz*, 606 F.3d at 1198).

It was undisputed that Dr. Kresock signed his Schedules, SOFA, and all amendments thereof, declaring them to be true and correct, and later affirmed the accuracy of his Schedules and SOFA, as amended, under oath at his § 341(a) meeting. Despite this, Dr. Kresock was clearly aware that assets were missing from his Schedules because he filed an objection to their sale in which he identified them. He also had to have known that it was not true when he asserted on his Schedules that he gave no gifts over $600 in the two years preceding his bankruptcy, and when he asserted at the § 341(a) meeting that he gave no gifts over $250 in the 12 months preceding his bankruptcy, because he asked his CPA to prepare gift tax returns reflecting the annual $100,000 gifts to Ms. Smith in each year.

Based on the record, the bankruptcy court said it could not reasonably conclude that Dr. Kresock acted anything less than knowingly given the "magnitude of the misstatements and omissions he made" about (1) his business income, (2) the gifts he gave to Ms. Smith, and (3) assets, including vehicles and potentially valuable collectables, which collectables Dr. Kresock clearly knew existed given that he disclosed their existence in his sale objection. The bankruptcy court did not err in determining that Dr. Kresock knowingly made a false oath.

### d. False oath was made fraudulently

False oaths are fraudulent if the debtor knew they were false at the time they were made and made them with the purpose of deceiving creditors. *In re Retz*, 606 F.3d at 1198-99. Because debtors are unlikely to admit to acting with fraudulent intent, the intent element of a § 727(a)(4)(A) analysis "is usually proven by circumstantial evidence or by inferences drawn from the debtor's conduct." *Id.* at 1199; *see also In re Khalil*, 578 F.3d at 1169 ("Fraudulent intent may be inferred from a pattern of behavior."). "[T]he number of misstatements or omissions, or the size or nature of a single one, might suffice to support a finding that a debtor knowingly and fraudulently made a false oath[.]" *In re Khalil*, 379 B.R. at 176.

"Summary judgment is ordinarily not appropriate in a § 727 action where there is an issue of intent." *In re Wills*, 243 B.R. at 65. However, conclusory statements of fact and self-serving declarations are insufficient to create genuine issues of material fact, *United States v. Wilson*, 881 F.2d 596, 601 (9th Cir. 1989), and "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990), cited with approval in *Gertsch v. Johnson & Johnson Fin. Corp. (In re Gertsch),* 237 B.R. 160, 165 (9th Cir. BAP 1999) (summary judgment is proper if all reasonable inferences defeat the claims of one side, even when intent is at issue).

24

The bankruptcy court reasoned that "the sheer number of misstatements and omissions" in Dr. Kresock's Schedules and SOFAs and the monetary value of his omitted assets and transfers, together with his knowing failure to fully and accurately amend his Schedules and SOFA in the four years that his bankruptcy case was pending, supported a finding of "reckless indifference to the truth." *See United States Tr. v. Garland (In re Garland)*, 417 B.R. 805, 815 (10th Cir. BAP 2009) (reckless indifference to the truth is treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A)). Further, Dr. Kresock told the court that if he did not disclose a prepetition asset, he could keep it out of his bankruptcy estate. Given this peculiar admission, combined with his clear knowledge of assets he failed to disclose, Dr. Kresock's actions could not reasonably be viewed as careless or reckless mistakes; Dr. Kresock took actions consistent with his admission in a clear and deliberate attempt to conceal assets and defraud creditors. Consequently, we discern no error in the bankruptcy court's determination that Dr. Kresock acted with fraudulent intent when he made the false oaths. While it is rare to grant summary judgment on a § 727(a)(4) claim, because the element of intent often requires a factual determination, the uncontroverted evidence of intent was so overwhelming here that summary judgment was appropriate.[5]

---

[5] Although not relied upon by the bankruptcy court, Dr. Kresock's deliberate attempt to establish the green Hummer as a postpetition asset with his altered bill of sale was sufficient to deny him a discharge under § 727(a)(4)(A). *See Fresno Motors, LLC v. Mercedes Benz USA, LLC,* 771 F.3d 1119, 1125 (9th Cir. 2014) (we may affirm on any ground supported by the record regardless of whether the bankruptcy court relied upon that ground).

The only defense Dr. Kresock offered was that he acted on the advice of his first counsel, Mr. Giunta. "Generally, a debtor who acts in reliance on the advice of his attorney lacks the intent required to deny him a discharge of his debts." *In re Retz*, 606 F.3d at 1199 (quoting *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir. 1986)). "However, the debtor's reliance must be in good faith." *Id.* (quoting *In re Adeeb*, 787 F.2d at 1343). The advice of counsel is not a defense if what is at issue is erroneous information that should have been evident to the debtor or if it is clear that the property at issue should have been scheduled. *See id.*

The bankruptcy court rejected Dr. Kresock's advice of counsel defense as lacking merit. Not only had he not submitted any admissible evidence in support of this defense, he could not assert this defense since the erroneous information in his Schedules and SOFAs should have been evident to him, and it was clear that the omitted assets should have been scheduled. We discern no error in the bankruptcy court's determination that Dr. Kresock fraudulently made a false oath, and that his advice of counsel defense was insufficient given the record.

On appeal, Dr. Kresock argues that any errors or omissions in his Schedules and SOFAs were Mr. Guinta's fault, and that whether Mr. Giunta should be held accountable is an issue of material fact for trial. Mr. Giunta's competency is of no consequence here given the record. Further, his representation of Dr. Kresock ended just four months after the bankruptcy was filed. Dr. Kresock knew that he could amend his Schedules and SOFA,

yet he never corrected the numerous omissions and misstatements that he clearly knew were there. Additionally, when he was given the opportunity to explain any discrepancies in his Schedules and SOFAs, Dr. Kresock invoked his Fifth Amendment right against self-incrimination.

Accordingly, the bankruptcy court did not err in granting the UST summary judgment and denying Dr. Kresock's discharge under § 727(a)(4)(A).

## CONCLUSION

Because the elements for a claim under § 727(a)(3) and (a)(4)(A) were met, and Dr. Kresock failed to establish the existence of a genuine dispute of material fact for either claim, the UST was entitled to summary judgment on both claims as a matter of law. The bankruptcy court did not err in granting summary judgment as to both claims and denying Dr. Kresock's discharge under § 727(a)(3) and (a)(4)(A). Accordingly, we AFFIRM.