Filed 6/10/22 Certified for Publication 7/1/22 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ALLIED ANESTHESIA MEDICAL GROUP, INC. et al., | E074729 |
| Plaintiffs and Appellants, | (Super.Ct.No. CIVDS1806917) |
| v. | OPINION |
| INLAND EMPIRE HEALTH PLAN, | |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Keith D. Davis, Judge.  Affirmed.

Kessenick, Gamma & Free, Michael A. Gawley, James M. Cooper and Jason M. Allen for Plaintiffs and Appellants.

Tucker Ellis and Traci L. Shafroth for California Society of Anesthesiologists as Amici Curiae on behalf of Plaintiffs and Appellants.

Athene Law, Long X. Do, Felicia Sze and Eric Chan for California Medical Association as Amici Curiae on behalf of Plaintiffs and Appellants.

1

Grignon Law Firm, Margaret M. Grignon, Anne M. Grignon; Kennaday Leavitt Owensby, Jack A. Janov, Curtis S. Leavitt and James F. Novello for Defendant and Respondent.

Daponde Simpson Rowe, Michael J. Daponde and Darcy L. Muilenburg for California Association of Health Plans and Local Health Plans of California as Amici Curiae on behalf of Defendant and Respondent.

Defendant and respondent Inland Empire Health Plan (IEHP) is a health care service plan subject to the Knox-Keene Health Care Service Plan Act of 1975 (Knox-Keene Act). (Health & Saf. Code, § 1340 et seq.) It contracts with certain medical groups and providers to provide medical care at reduced costs to eligible beneficiaries of the California Medical Assistance Program (Medi-Cal or Medicaid) who are enrolled with IEHP. (Health & Saf. Code, § 1342.6.) Plaintiffs and appellants Allied Anesthesia Medical Group, Inc., and Upland Anesthesia Medical Group (plaintiffs) are groups of doctors who provided anesthesia services to IEHP's enrollees for elective, nonemergency surgeries. Plaintiffs had no provider contract with IEHP; however, they had exclusive agreements with the hospitals. Plaintiffs were paid at the Medi-Cal fee schedule rate.

In this action, plaintiffs claim that IEHP should have paid them at the reasonable and customary value rate for their services instead of the Medi-Cal fee schedule rate. Their third amended complaint (TAC) contains causes of action for breach of implied-in-fact contract, breach of contract (third party beneficiary), and requested a declaratory judgment based solely upon the Knox-Keene Act and the Claims Settlement Practices regulation (Cal. Code Regs., tit. 28, § 1300.71, subd. (a)(3)(B) (regulation 1300.71)).

2

IEHP demurred on several grounds, including (1) the cause of action for breach of implied-in-fact contract fails to sufficiently plead "mutual assent" and "legal consideration"; and (2) the cause of action for breach of contract (third party beneficiary) fails to allege how plaintiffs are the express, intended third party beneficiaries of any contract between IEHP and the California Department of Health Care Services (department). The trial court agreed with IEHP, sustained its demurrer without leave to amend, and entered judgment on February 7, 2020.

On appeal, plaintiffs contend IEHP is obligated to pay them the reasonable and customary value rate for their services to IEHP's enrollees. We disagree and affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

*A. Background.*

Plaintiffs are medical groups with anesthesia medical practices. IEHP is the local initiative Medi-Cal managed care plan that "operates under a joint powers agreement between Riverside and San Bernardino Counties to provide health coverage for Medi-Cal participants. [It] arranges and pays for medical services to plan members by contracting with [independent practice associations] and others for the delivery of those services." (*Inland Empire Health Plan v. Superior Court* (2003) 108 Cal.App.4th 588, 590 (*IEHP v. Superior Court*), disapproved on other grounds in *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 814.) Riverside and San Bernardino Counties have adopted a two-plan model for Medi-Cal managed care. "Under the Two-Plan Model, a county requires its Medi-Cal beneficiaries to enroll in one of two managed care plans: a public entity HMO known as a 'local initiative,' or a commercial HMO. The

3

[department] pays each plan on a capitated basis (a fixed amount per member per month) for each Medi-Cal recipient, regardless of the level of services used by each recipient. In exchange, the plan assumes all financial responsibility for its members' care and must pay health care service providers directly."

IEHP's contract with the department to provide health coverage for Medi-Cal participants (sometimes referred to as the contract) obligates IEHP to "comply with a number of requirements regarding its relationships with medical providers." It "may enter into [s]ubcontracts with other entities in order to fulfill the obligations of the [c]ontract." However, all "[s]ubcontracts shall be in writing and in accordance with the requirements of the 42 CFR 438.230(b)(2), Knox-Keene [Act], Health and Safety Code Section 1340 et seq.; Title 28, Section 1300 et seq.; Welfare and Institutions Code Section 14200 et seq.; Title 22 CCR Section 53800 et seq.; and other applicable Federal and State laws and regulations." And, it must specify the services to be provided and provide a "[f]ull disclosure of the method and amount of compensation or other consideration to be received by the subcontractor" from IEHP. The department must approve subcontracts. Even if there is no written subcontract between IEHP and providers like plaintiffs, the contract authorizes compensation.

IEHP had no provider contract with plaintiffs; however, plaintiffs had *exclusive*[1] agreements with the health care facilities that performed surgeries for IEHP's Medi-Cal

---

[1] To have *exclusive* agreements meant that plaintiffs "were the only anesthesiologists contractually permitted to perform anesthesia services at those facilities."

4

HMO enrollees. Thus, for years, plaintiffs provided anesthesia services to IEHP's Medi-Cal HMO enrollees for elective, nonemergency surgeries—like hysterectomies, knee and hip replacements, corneal transplants, open-heart surgeries, and brain surgeries—for which anesthesia was needed. Before plaintiffs provided anesthesia services, either the health care facility at which the surgery would be performed or the surgeon performing the procedure requested IEHP's authorization to perform the surgery. After plaintiffs provided its services, they invoiced IEHP, which paid the invoices at the Medi-Cal fee schedule rate, which sets payment at an amount "below reasonable and customary value."

### B. Plaintiffs' Claims.

Believing they should have been paid the reasonable and customary value for their anesthesia services, plaintiffs initiated this action against IEHP on March 23, 2018. They alleged five causes of action: breach of implied-in-fact contract, breach of contract (third party beneficiary), unfair competition, quantum meruit, and declaratory judgment. IEHP demurred, plaintiffs amended their complaint, IEHP demurred again, and plaintiffs filed a second amended complaint (SAC). The SAC reduced the number of causes of action to three: breach of implied-in-fact contract, breach of contract (third party beneficiary), and declaratory judgment. The thrust of the SAC was that IEHP's approval of surgical procedures for its enrollees constituted implied authorization, through custom and practice, for plaintiffs to be paid based on the reasonable and customary value of their anesthesia services instead of the Medi-Cal fee schedule rate. IEHP demurred again, and the trial court found that plaintiffs' implied-in-fact claim failed because there was, inter alia, no "meeting of the minds with regard to specific payment amounts for services

5

rendered pursuant to such an implied contract," and their breach of contract (third party beneficiary) claim failed because plaintiffs are not third party beneficiaries of the contract. The court sustained the demurrer with leave to amend.

On May 16, 2019, plaintiffs filed the TAC, which alleged the same three causes of actions alleged in the SAC. Plaintiffs concede that the Medi-Cal managed care delivery system most relevant in this case is the two-plan model under which Medi-Cal beneficiaries enroll in one of two managed care plans: "a public entity HMO known as a 'local initiative,' or a commercial HMO[, and t]he [department] pays each plan on a capitated basis (a fixed amount per member per month) for each Medi-Cal recipient, regardless of the level of services used by each recipient." They admit that (1) they are enrolled as Medi-Cal providers, (2) they provided nonemergency anesthesia services for IEHP's Medi-Cal HMO enrollees, and (3) they were paid based on the fixed Medi-Cal fee schedule rate. However, they assert that IEHP was required "to comply with all applicable Knox-Keene [Act] regulations, including [regulation 1300.71]" and "pay [them] the reasonable and customary value for their services."

On June 24, 2019, IEHP demurred to plaintiffs' TAC on the grounds that (1) the cause of action for breach of implied-in-fact contract fails to sufficiently plead "mutual assent" and "legal consideration"; and (2) the cause of action for breach of contract (third party beneficiary) fails to allege how plaintiffs are the express, intended third party beneficiaries of any contract between IEHP and the department. IEHP further asserted that regulation 1300.71 is "*superseded* **by Medi-Cal Act regulation[s]**" (e.g., Cal. Code Reg., tit. 22 § 51503), "*preempted* **by Federal Medicaid regulation[s]**" (e.g., 42 C.F.R.

6

§ 447.15), "**excludes Medi-Cal Managed Care Plans like IEHP from the regulation,**" "**does not apply to [p]laintiffs' <u>nonemergency</u> claims,**" and "does not apply because there is **no private right of action** under [regulation] 1300.71." More specifically, IEHP cited California Code of Regulations, title 22, section 51503 and Welfare and Institutions Code section 14124.70, subdivision (c), and argued that the "Medi-Cal Physician Fee Schedule governs <u>all</u> physician 'services and procedures' that 'are a <u>benefit of the Medi-Cal program</u>,'" and "**reasonable value** means the **Medi-Cal Fee Schedule** for *all* Medi-Cal *benefits*." IEHP requested judicial notice be taken of the Center for Medicare & Medicaid Services' standard health insurance claim form (CMS-1500).

In opposing the demurrer, plaintiffs argued the law treats Medi-Cal managed care plan payments differently than Medi-Cal payments from the department to physician providers, and that the authorization for medical services creates an implied-in-fact contract where the price paid to the physician providers is mandated by Knox-Keene regulations. (See *Children's Hospital Central California* (2014) 226 Cal.App.4th 1260, 1273, 1278-1279 (*Children's Hospital*).) Plaintiffs asserted that federal preemption did not apply, and they were entitled to the reasonable and customary value of their services since they were providers under regulation 1300.71, subdivision (a)(3)(B). They opposed judicial notice of form CMS-1500 on the grounds it was "not relevant to the issues presented," they did not allege that they had used it, and IEHP had not established that they had used it.

In reply, IEHP noted that plaintiffs' failure to allege any express reimbursement-rate term agreed to by the parties barred any contract claim. IEHP also sought judicial

7

notice of two official statements from the department—a 2005 all plans letter and a 2015 notice of decision—and argued that these statements, which address regulation 1300.71, bar plaintiffs' claims. Specifically, IEHP asserted that these statements "indicate that payment of Medi-Cal Fee Schedule rates by a Medi-Cal Managed Care Health Plan satisfies the *reasonable and customary* value provision in [regulation] 1300.71(a)(3)(B) for payments *by Medi-Cal Managed Care health plans to enrolled Medi-Cal providers for rendering Medi-Cal services*." Regarding form CMS-1500, IEHP pointed out that plaintiffs alleged that they had submitted "more than ten thousand claims to [IEHP] for medically necessary anesthesia services [p]laintiffs performed for elective, non-emergency surgeries authorized by [IEHP]" and were paid "based on the fixed Medi-Cal fee-for-service schedule." IEHP also noted that the TAC concedes that plaintiffs never requested authorization from IEHP to provide anesthesia services; rather, it was either the "facility where the surgery [would] be performed or the surgeon who [would] perform the surgery" that submitted the request.

Plaintiffs filed a sur-reply wherein they opposed IEHP's newly raised argument that the official statements from the department—a 2005 all plans letter and a 2015 notice of decision—establish that IEHP's payment of Medi-Cal fee schedule rates to plaintiffs satisfied the reasonable and customary value provision in regulation 1300.71(a)(3)(B). Plaintiffs further claimed that application of the statements was limited to "*non-contracted* provider claims"; however, plaintiffs "are contracted providers without a written contract."

8

At the hearing on November 22, 2019, the trial court observed that the TAC's allegations had not substantially changed from the allegations in the SAC. It denied IEHP's request for judicial notice of form CMS-1500 and the department's statements as unnecessary and sustained the demurrer without leave to amend. It found that plaintiffs failed to allege a meeting of the minds on the requisite terms for any implied-in-fact contract, they were not third party beneficiaries of the contract, and the declaratory judgment cause of action was merely derivative of the contract claims.

### E. Entry of Judgment.

Plaintiffs' action was dismissed on December 10, 2019, and judgment in favor of IEHP was entered on February 7, 2020.

## II. DISCUSSION

### A. Standard of Review

"On review of a judgment of dismissal following the sustaining of a demurrer, 'our standard of review is clear: "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.

9

[Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.'"  [Citation.]  'Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.'"  (*Lebrun v. CBS Television Studios*, *Inc.* (2021) 68 Cal.App.5th 199, 207.)

### B.  *Medicaid and Medi-Cal Law*

The federal Medicaid program was established under title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.; Medicaid Act).  (*Life Care Centers of America v. CalOptima* (2005) 133 Cal.App.4th 1169, 1174 (*CalOptima*).)  It "provides federal financial assistance to participating states to support the provision of health care services to certain categories of low-income individuals and families, including the aged, blind, and disabled, as well as pregnant women and others." (*Marquez v. State Dept. of Health Care Services* (2015) 240 Cal.App.4th 87, 93.)  States who choose to participate in Medicaid "must comply with federal requirements and administer its Medicaid program through a plan approved by the federal Centers for Medicare and Medicaid Services." (*Dignity Health v. Local Initiative Health Care Authority of Los Angeles County* (2020) 44 Cal.App.5th 144, 152 (*Dignity Health*); see 42 U.S.C. § 1396a(a)(1)-(87).)

Medi-Cal implements the Medicaid Act, and the department administers "Medi-Cal in accordance with the state plan, applicable Welfare and Institutions Code provisions, and Medi-Cal regulations."  (*Santa Rosa Memorial Hospital*, *Inc. v. Kent* (2018) 25 Cal.App.5th 811, 815-816; see Welf. & Inst. Code, §§ 14000-14198.2;

10

Cal. Code Regs., tit. 22, § 50004.)[2]  Medi-Cal does not directly provide services; rather, it reimburses participating health care plans and providers "using two systems:  fee-for-service and managed care.  [Citations.]  [¶]  Medi-Cal beneficiaries in the fee-for-service system may obtain services 'from any provider that participates in Medi-Cal, is willing to treat the beneficiary, and is willing to accept reimbursement from [the department] at a set amount for the services provided.'  [Citation.]  Under this system, the state reimburses health care providers directly for each covered service." (*Dignity Health*, *supra*, 44 Cal.App.5th at p. 152.)  "Entities that enroll as Medi-Cal providers are entitled to reimbursement for the services that they provide to the program's beneficiaries. [Citation.]  The Medi-Cal statute stipulates that 'payment received from the state in accordance with Medi-Cal fee structures shall constitute payment in full' for services provided.  [Citation.]  And when providers enroll in the program, they must sign a Medi-Cal Provider Agreement[3] that contains a condition to the same effect." (*Sierra Med. Servs. All. v. Kent* (9th Cir. 2018) 883 F.3d 1216, 1220; see Welf. & Inst. Code,

[2]  California Code of Regulations, title 22, section 50004, in relevant part, provides:  "(a) The Department is the single state agency approved by the Secretary of the Department of Health and Human Services to administer the Medi-Cal program.  [¶] (b) The Department shall administer the Medi-Cal program in accordance with the following:  [¶] (1) The State Plan under Title XIX of the Social Security Act.  [¶]  (2) Applicable State law, as specified in the Welfare and Institutions Code.  [¶]  (3) Medi-Cal regulations."

[3]  "[P]ayment received from [the department] in accordance with Medi-Cal fee structures shall constitute payment in full . . . ."  (Dept. of Health Care Services, Medi-Cal Provider Agreement, form DHCS 6208 (Revised 08/2021), p. 6 at <https://files.medi-cal.ca.gov/pubsdoco/ Publications/masters-other/provappsenroll/02enrollment_ DHCS6208.pdf> [as of June 10, 2022].)

11

§§ 14019.3, subds. (c),[4] 14043.2, subd. (a);[5] Cal. Code Regs., tit. 22, §§ 51000.45,[6] 51501, subd. (b),[7] & 51503, subd. (b).)[8] The department has adopted a Medi-Cal fee schedule that reflects the "'payment in full'" rates for approved providers. (*Sierra Med. Servs. All. v. Kent*, at pp. 1220-1221; see Welf. & Inst. Code, § 14105, subd. (a).)[9]

---

[4] Welfare and Institutions Code section 14019.3, subdivision (c), in relevant part, provides that a provider's Medi-Cal claim is "subject to the rules and regulations of the Medi-Cal program."

[5] Welfare and Institutions Code section 14043.2, subdivision (a), in relevant part, provides: "[I]n order to be enrolled as a provider, or for enrollment as a provider to continue, an applicant or provider may be required to sign a provider agreement and shall disclose all information as required in federal Medicaid regulations and any other information required by the department. . . ."

[6] California Code of Regulations, title 22, section 51000.45, in relevant part, provides: "An applicant or provider shall sign and submit one of the following provider agreements, as applicable: [¶] (a) 'Medi-Cal Provider Agreement,' . . . . [¶] (b) 'Medi-Cal Physician Application/Agreement,' . . . . [¶] (c) 'Medi-Cal Rendering Provider Application/Disclosure Statement/Agreement for Physician/Allied/Dental Providers,' . . . ."

[7] California Code of Regulations, title 22, section 51501, subdivision (b), provides: "Payments for benefits under the Medi-Cal Program can be made only to providers who meet the Standards for Participation specified in Article 3 (commencing with Section 51200), and the requirements for payment in Article 7 of this chapter."

[8] California Code of Regulations, title 22, section 51503, subdivision (b), in relevant part, provides: "[T]he maximum reimbursement rates for physician services shall be the rates set forth in the 'Schedule of Medi-Cal Physician Rates', published by the Department of Health Services . . . ."

[9] Welfare and Institutions Code section 14105, subdivision (a), in relevant part, provides: "The director shall prescribe the policies to be followed in the administration of this chapter, may limit the rates of payment for health care services, and shall adopt any rules and regulations as are necessary for carrying out, but are not inconsistent with, the provisions thereof. [¶] The policies and regulations shall include rates for payment for services not rendered under a contract pursuant to Chapter 8 (commencing with Section 14200) . . . ."

"In the managed care system, '[the department] contracts with health maintenance organizations (HMOs) and other managed care plans [such as IEHP] to provide health coverage to Medi-Cal beneficiaries, and the plans are paid a predetermined amount for each beneficiary per month [(a capitation payment)], whether or not the beneficiary actually receives services. [Citations.] The beneficiary then obtains medical services from a provider within the managed care plan's network.'" (*Dignity Health*, *supra*, 44 Cal.App.5th at p. 152.) "The purpose of these managed care programs is to '"reduce costs, prevent unnecessary utilization, reduce inappropriate utilization, and assure adequate access to quality care for Medicaid recipients."'" (*CalOptima*, *supra*, 133 Cal.App.4th at pp. 1174-1175; see *Keffeler v. Partnership Healthplan of California* (2014) 224 Cal.App.4th 322, 330-331.) These managed care plans act as fiscal intermediaries. (Welf. & Inst. Code, §§ 14499.71 [defines fiscal intermediary], 14499.77.)[10] The department's capitation payments to managed care plans are based on an estimate of the total per capita amount that would be payable for all contracted requirements and services to each beneficiary had those services been provided to the same Medi-Cal beneficiaries under the fee-for-service Medi-Cal program. (Welf. & Inst. Code, § 14499.74 [explaining how capitation payments are determined].)

---

[10] Welfare and Institutions Code section 14499.77 provides: "All services, except those specified for exclusion by the department, received by Medi-Cal recipients residing in the geographical area served by the fiscal intermediary shall be paid for by the fiscal intermediary. Services shall be provided only by providers which have entered into agreements with the fiscal intermediary, unless authorized by the fiscal intermediary."

*C. Analysis.*

The instant matter arises from a payment dispute between a health care service plan (IEHP) and medical providers (plaintiffs). Typically, such disputes are governed by the Knox-Keene Act controls. (Welf. & Inst. Code, § 14251.)

"The Knox-Keene Act 'is "a comprehensive system of licensing and regulation" [of health care service plans] . . . within the jurisdiction of the [department] . . . .'" (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1005 (*Centinela*).) The Knox-Keene Act promotes the delivery and quality of health care to people enrolled in a health care service plan, by "(1) 'transferring the financial risk of health care from patients to providers' in order to [h]elp . . . ensure the best possible health care for the public at the lowest possible cost,' (2) imposing 'proper regulatory procedures' in order to '[e]nsur[e] the financial stability' of the system, and (3) establishing a system that ensures health care service plan 'subscribers and enrollees receive available and accessible health and medical services rendered in a manner providing continuity of care.'" (*Centinela*, at p. 1005; see Health & Saf. Code, § 1342, subds. (d), (f), & (g).)

The Knox-Keene Act includes provisions requiring health care service plans to timely pay provider claims. (Health & Saf. Code, §§ 1371 ["[A] health care service plan . . . shall reimburse claims . . . as soon as practicable, but no later than 30 working days after receipt of the claim . . . ."], 1371.35 [same].) These provisions "impose procedural requirements on claim processing and subject health care service plans to disciplinary action and penalties for failure to timely comply with those requirements." (*YDM*

14

*Management Co.*, *Inc. v. Sharp Community Medical Group*, *Inc.* (2017) 16 Cal.App.5th 613, 625 (*YDM*).) Pursuant to these provisions, the department "has promulgated regulations concerning the reimbursement of claims for emergency and nonemergency services." (*Id.* at p. 624.) One regulation, which plaintiffs contend is at "the heart of this case," is regulation 1300.71. Regulation 1300.71 is entitled the "'Claims Settlement Practices'" and "is authorized by Health and Safety Code sections 1371 and 1371.35. These statutes impose procedural requirements on claim processing and subject health care service plans to disciplinary action and penalties for failure to timely comply with those requirements." (*Pacific Bay Recovery*, *Inc. v. California Physicians' Services*, *Inc.* (2017) 12 Cal.App.5th 200, 207 (*Pacific Bay*).)

Regulation 1300.71, subdivision (a)(3), defines reimbursement of a claim as: "(A) For contracted providers with a written contract, including in-network point-of-service (POS) and preferred provider organizations (PPO): the agreed upon contract rate; [¶] (B) For contracted providers without a written contract and non-contracted providers, except those providing services described in paragraph (C) below: the payment of the reasonable and customary value for the health care services rendered based upon statistically credible information that is updated at least annually and takes into consideration: (i) the provider's training, qualifications, and length of time in practice; (ii) the nature of the services provided; (iii) the fees usually charged by the provider; (iv) prevailing provider rates charged in the general geographic area in which the services were rendered; (v) other aspects of the economics of the medical provider's practice that are relevant; and (vi) any unusual circumstances in the case; and [¶] (C) For non-

15

emergency services provided by non-contracted providers to PPO and POS enrollees:  the amount set forth in the enrollee's Evidence of Coverage."  (Regulation 1300.71, subd. (a)(3)(A)-(C).)

In paragraph 28 of the TAC, plaintiffs acknowledge the department "has an extensive regulatory framework for the setting of reimbursement rates for HMOs, including Medi-Cal managed care plans operating under the Two-Plan Model."  They assert that regulation 1300.71 "impose[s] procedural requirements on claim processing," and "that California law requires health plans to reimburse contracted providers without a written contract the reasonable and customary value of the services rendered."  (See Regulation 1300.71, subd. (a)(3)(B); *Children's Hospital*, *supra*, 226 Cal.App.4th at p. 1274 [interpreting "reasonable and customary value" as "the 'going rate' for the services" or "the reasonable market value at the current market prices"].)  According to plaintiffs, because they are contracted providers without a written contract, regulation 1300.71 mandates that they be paid the reasonable and customary value of their services.  Since they were not paid the reasonable and customary value for their services, plaintiffs sued IEHP on two theories:  breach of the implied-in-fact contract and third party beneficiaries of the contract (IEHP's contract with the department).

We begin by considering whether plaintiffs are the intended beneficiaries of the Contract.

1. *Third party beneficiaries cause of action.*

Plaintiffs' second cause of action alleges they are the third party beneficiaries of the Contract.  "A contract, made expressly for the benefit of a third person, may be enforced

16

by him at any time before the parties thereto rescind it." (Civ. Code, § 1559.) The TAC alleges plaintiffs are third party beneficiaries because specific portions of the contract evidence the parties' intent to directly benefit providers, by ensuring that they are compensated for health care services rendered to IEHP's Medi-Cal enrollees at reasonable and customary value. The specific portions identified by the TAC are "'PROVIDER RELATIONS'" and "'PROVIDER COMPENSATION ARRANGEMENTS.'" "A third party may qualify as a beneficiary when it appears from the terms of the contract itself that the contracting parties intended to benefit the third party." (*Ochs v. PacifiCare of California* (2004) 115 Cal.App.4th 782, 795 (*Ochs*).) "If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person. The parties are presumed to intend the consequences of a performance of the contract." (*Johnson v. Holmes Tuttle Lincoln-Mercury*, *Inc*. (1958) 160 Cal.App.2d 290, 297.) In general, "a health care service provider's agreement to pay for medical care is intended to benefit the enrollees, not treating physicians with whom there is no contractual relationship. [Citation.] Under ordinary circumstances, noncontracting health care providers . . . would be only incidental beneficiaries of a contractual agreement to pay for an enrollee's medical care." (*Ochs*, at p. 795; see *Hollister v. Benzl* (1999) 71 Cal.App.4th 582, 586-587 [holding the treating physician not employed by an HMO was neither a party to nor a third party beneficiary of the contract between patients and HMO and was not bound by that contract's arbitration agreement].) Such is the case before this court.

17

The intended beneficiaries of the contract are the Medi-Cal enrollee members, not the providers. Here, the language in the specific sections of the contract identified by plaintiffs fails to support the claim that "[t]hese provisions were included . . . expressly for the benefit and protection of medical providers, like [p]laintiffs." The provider relations section, in part, required the following: (1) allowing providers to provide services to Medi-Cal beneficiaries who are not members of the contractor's plan; (2) allowing providers to submit grievances regarding authorization or denial of services/referral on behalf of a member; (3) setting a process for payment to providers; (4) mandating training for providers "on all [m]ember rights;" (5) prohibiting punitive action against providers for advocating for members; and (6) barring any restriction on providers for "advising or advocating on behalf of a [m]ember." The provider compensation arrangements section, in part, authorized contractors to negotiate with providers on the amount of their compensation and set the minimum amounts and timeline for payment of claims.

Since the identified sections prescribe directives to enhance and support enrollee members' access to health care services, the intended beneficiaries are the enrollee members, not the providers. While providers, like plaintiffs, may benefit by the contract's requirement that IEHP comply with the Knox-Keene Act and the department's regulations (vis-à-vis payment of providers' claims), any such benefit is merely incidental and, therefore, insufficient for plaintiffs to allege a cause of action based on the third party beneficiary doctrine. (*California Emergency Physicians Medical Group v. PacifiCare of California* (2003) 111 Cal.App.4th 1127, 1137 ["'Civil Code Section 1559

18

excludes enforcement of a contract by persons who are only incidentally or remotely benefited by it.'"], disapproved on other grounds in *Centinela*, *supra*, 1 Cal.5th at pp. 1010-1011.)

In short, the language of the contract reflects the parties' intent to benefit Medi-Cal HMO member enrollees. There is no suggestion that the "motivating purpose"[11] of the contract was to benefit plaintiffs; permitting plaintiffs the right to be compensated at a rate higher than the Medi-Cal fee schedule rate was not necessary to effectuate the Medi-Cal HMO member enrollees' contractual rights. We thus conclude that the trial court did not err in rejecting plaintiffs' theory that they were third party beneficiaries of the contract.

We, therefore, turn to the question of whether plaintiffs can claim that IEHP's conduct created an implied-in-fact contract, which made plaintiffs "contracted providers without a written contract."

2. *Implied-in-fact contract cause of action.*

Plaintiffs' first cause of action alleges that they entered into valid "implied-in-fact" contracts with IEHP for the treatment of its Medi-Cal HMO enrollees. This claim is based on Civil Code section 1621, which provides, "An implied contract is one, the existence and terms of which are manifested by conduct."

---

[11] See *Goonewardene v. ADP*, *LLC* (2019) 6 Cal.5th 817, 830 ["Because of the ambiguous and potentially confusing nature of the term 'intent' [citation], this opinion uses the term 'motivating purpose' in its iteration of this element to clarify that the contracting parties must have a motivating purpose to benefit the third party, and not simply knowledge that a benefit to the third party may follow from the contract."].)

"'[T]he vital elements of a cause of action based on contract are mutual assent (usually accomplished through the medium of an offer and acceptance) and consideration. As to the basic elements, there is no difference between an express and implied contract. While an express contract is defined as one, the terms of which are stated in words (Civ. Code, § 1620), an implied contract is an agreement, the existence and terms of which are manifested by conduct (Civ. Code, § 1621). . . . [B]oth types of contract are identical in that they require a meeting of minds or an agreement [citation]. Thus, it is evident that both the express contract and contract implied in fact are founded upon an ascertained agreement or, in other words, are consensual in nature, the substantial difference being in the mode of proof by which they are established.'" (*Pacific Bay*, *supra*, 12 Cal.App.5th at pp. 215-216, quoting *Division of Labor Law Enforcement v. Transpacific Transportation Co.* (1977) 69 Cal.App.3d 268, 275.)

Here, plaintiffs maintain that IEHP's conduct of authorizing surgical procedures, which necessarily required anesthesia, and knowing that plaintiffs would provide anesthesia services for those surgical procedures establishes the existence of an implied agreement to pay plaintiffs at a rate (the reasonable and customary value pursuant to regulation 1300.71), which is significantly more than the Medi-Cal fee schedule rate. We disagree.

To begin with, we note that plaintiffs do not allege that there were any verbal communications with IEHP regarding their anesthesia services, i.e., plaintiffs never asked IEHP for authorization to provide anesthesia services prior to any surgery nor did the hospitals or surgeons ask for IEHP to provide anesthesia services. A hospital's or

20

surgeon's request for authorization of a surgical procedure, which requires anesthesia, is insufficient for the creation of an agreement between plaintiffs and IEHP. Also, the fact that IEHP only paid plaintiffs at the Medi-Cal fee schedule rate—the rate at which it was paying the physicians and hospitals it had contracts with—undermines plaintiffs' claim that the parties ever agreed on the same contractual terms, to wit, the rate of plaintiffs' payment. (*Pacific Bay*, *supra*, 12 Cal.App.5th at p. 216 [a defendant's conduct of paying only part of what a plaintiff claims shows that the defendant never agreed to pay more].) Payment at the Medi-Cal fee schedule rate shows that IEHP believed it was paying the correct amount as required by California Code of Regulations, title 22, section 51503. Plaintiffs' allegation that they should have been paid the reasonable and customary value of their services shows that they believed they were entitled to a higher rate. The allegations in the TAC, therefore, do not exhibit any mutual consent as to an essential term of the alleged implied contract. (Civ. Code, § 1580 [Mutual consent only exists when "the parties all agree upon the same thing in the same sense."].)

Also, the TAC fails to identify any reasonable and customary rate or to assert that such rate was communicated to IEHP. Regarding plaintiffs' communications with IEHP, the TAC only alleges:

"59. By their conduct and consistent with industry custom, [IEHP] and Plaintiffs mutually consented to Plaintiffs providing non-emergency anesthesia services to [IEHP's] Medi-Cal HMO enrollees in exchange for payment . . . and that Plaintiffs would submit a bill to [IEHP] for payment of anesthesia services performed."

21

"60.  For the claims at issue in this case, [IEHP] . . . reviewed each request for authorization understanding that (1) a surgeon would perform a specific procedure on one of [IEHP's] HMO enrollees; (2) the surgery would medically require anesthesia; (3) a separate provider (an anesthesiologist) would provide medically necessary anesthesia; (4) the surgery would be performed at a facility where Plaintiffs had exclusive agreements to provide anesthesia services; and (5) Plaintiffs would provide non-emergency anesthesia services on [IEHP's] HMO enrollee. . . .  By approving these requests for authorization, [IEHP's] conduct exhibited an intention to be bound by an obligation that required reimbursement to Plaintiffs in exchange for anesthesia services performed on their enrollees."

"64.  As for the price term in the contracts between the parties, [IEHP] must reimburse Plaintiffs the reasonable and customary value of Plaintiffs' services.  The [department] requires [IEHP] to comply with all applicable Knox-Keene regulations, including [regulation 1300.71].  [Regulation 1300.71] governs the compensation [IEHP] owed Plaintiffs for authorized services performed.  Thus, without express agreements to a reimbursement rate other than what [regulation 1300.71] provides, [regulation 1300.71] supplies the price term for the parties' contracts.  Plaintiffs were contracted providers without a written contract and they provided non-emergency services to [IEHP's] HMO enrollees.  Under [regulation 1300.71], [IEHP] must pay Plaintiffs the reasonable and customary value for their services."

Absent from the TAC are any allegations that plaintiffs communicated the usual and customary rates for their specialty services before providing them or included such

22

rates in their "more than ten thousand claims to [IEHP] for medically necessary anesthesia services," which they performed. However, the amount that IEHP would pay plaintiffs for their services is a material term of any contract, such that, absent an allegation that the parties agreed on that amount, no implied-in-fact contract was formed. This is true especially since the TAC acknowledges: (1) IEHP contracts with certain providers at the Medi-Cal fee schedule rate; (2) IEHP contracts with specialists at rates higher than the Medi-Cal fee schedule rate; (3) plaintiffs are specialists; and (4) they are the *exclusive* providers of nonemergency anesthesia services for IEHP's Medi-Cal HMO enrollees. Absent a specified rate or a negotiated contract for plaintiffs' specialty services, IEHP paid plaintiffs' claims at the Medi-Cal fee schedule rate. IEHP's payments at such rate do not constitute a breach of any implied-in-fact contract because the TAC fails to assert a "meeting of the minds" regarding "what exactly [IEHP] agreed to pay." (*Pacific Bay*, *supra*, 12 Cal.App.5th at p. 216.)

We reject plaintiffs' claim that they need not plead a "meeting of the minds" on the rate at which they would be compensated because they are not demanding payment above the rate set by regulation 1300.71. (*Children's Hospital*, *supra*, 226 Cal.App.4th at p. 1279.) To do otherwise would allow plaintiffs to play fast and loose with their theories of liability. A claim for breach of an implied-in-fact contract requires plaintiffs to plead the agreed-upon rate. Otherwise, their allegations amount to a claim for quantum meruit in which they seek to recover the shortfall in the amount of their reimbursement based on the belief that the rate at which they were paid is below the reasonable and customary value of the services they provided. (*Long Beach Memorial Medical Center v. Kaiser*

23

*Foundation Health Plan*, *Inc.* (2021) 71 Cal.App.5th 323, 335; *Children's Hospital*, at p. 1273.)

Plaintiffs' reliance on *Children's Hospital* is misplaced. "In that case, a hospital sued a health care service plan for breach of an implied-in-fact contract to reimburse it for the reasonable value of the *poststabilization emergency medical services* rendered to Medi-Cal beneficiaries. [Citation.] Among other issues, *Children's Hospital* concerned whether the factors stated in [regulation] 1300.71, subdivision (a)(3)(B) . . . were the sole factors relevant in determining the reasonable and customary value of the hospital's services." (*Pacific Bay*, *supra*, 12 Cal.App.5th at p. 214, italics added.) "[P]rior to September 2008, California law did not set rates for out-of-network poststabilization care provided to Medi-Cal managed care patients. According to [*Children's Hospital*], payment for these services instead was determined under principles of quantum meruit. [Citation.] . . . The court held that the hospital was entitled to '"the reasonable and customary value"' of its poststabilization services pursuant to [regulation] 1300.71, subdivision (a)(3)(B), a claims settlement regulation applying to medical services provided to enrollees in managed care plans in general, both Medi-Cal and otherwise. [Citation.] The court further held that the 'reasonable and customary value' standard 'embodies the concept of quantum meruit,' and that the agency adopting the regulation, the [department], intended that 'value disputes be resolved by the courts.'" (*Dignity Health*, *supra*, 44 Cal.App.5th at p. 160, fn. omitted.)

*Children's Hospital* did not address *nonemergency* medical services performed by a provider with an exclusive agreement to provide specialty services to Medi-Cal

24

beneficiaries at facilities under contract with a managed care plan constrained by statutes, regulations, and its contract with the department. More accurately, it concerned out-of-network *poststabilization emergency medical services* rendered to Medi-Cal beneficiaries. Moreover, plaintiffs' invocation of regulation 1300.71 in support of their claims is a red herring.[12] Their causes of action are not based on any statutory or regulatory violation. Rather, they assert breach of contract under the theories of third party beneficiary or implied contract. However, because the TAC fails to state facts sufficient to allege such causes of action, plaintiffs are unable to invoke regulation 1300.71.

---

[12] The amici curiae briefs of the California Medical Association (CMA) and California Association of Health Plans and Local Health Plans of California (CAHP/LHPC) address plaintiffs' use of California statutes and regulations to support their right to be paid the reasonable and customary value for their services.

Regarding the amicus curiae brief of the California Society of Anesthesiologists (CSA), CSA offers a detailed policy discussion about the implications associated with allowing health care service plans to reimburse anesthesiologists at the Medi-Cal reimbursement rates. CSA urges this court to consider these important policy implications and argues that allowing IEHP to reimburse plaintiffs at "the far lower Medi-Cal rates will put unsustainable financial strain on Anesthesiologists' practice and others like it, which will in turn put pressure on the hospital systems with which they have contracted to provide anesthesia services, among other providers and commercial payers throughout California's health care system. This strain will ultimately reduce California patients' access to critical anesthesia services, and the procedures that necessarily rely on them." Although CSA raises an important economic and public policy issue, it does not pose a question of law based on undisputed facts to justify our consideration. (See *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 654-655, fn. 3 [Supreme Court considered argument for invalidating rent control ordinance raised by amicus curiae].) Rather, this issue is best handled by the Legislature or an administrative agency. (See *Desert Healthcare Dist. v. PacifiCare FHP, Inc.* (2001) 94 Cal.App.4th 781, 796 ["[B]ecause the remedies available under the [unfair competition law], namely injunctions and restitution, are equitable in nature, courts have the discretion to abstain from employing them."], disapproved on other grounds in *Centinela*, *supra*, 1 Cal.5th at p. 1014, fn. 10.)

25

Even if we consider the merits of plaintiffs' assertion that the regulation 1300.71 "requires [IEHP] to reimburse [them] at reasonable and customary value,"[13] we do not agree that this value is the "fair market value" rather than the value set by the Medi-Cal fee schedule. IEHP and CAHP/LHPC aptly note that, absent an agreement with IEHP for a different rate of payment, California Code of Regulations, title 22, section 51503 caps the rate at reasonable and customary as defined by the Medi-Cal fee schedule rate. California Code of Regulations, title 22, section 51503, in relevant part, provides: "(a) Except as otherwise provided, reimbursement for physician services shall be the usual charges made to the general public not to exceed the maximum reimbursement rates listed in this section for each procedure performed by a physician. [¶] . . . (b) [T]he maximum reimbursement rates for physician services shall be the rates set forth in the 'Schedule of Medi-Cal Physician Rates', published by the [department], . . . . [¶] . . . [¶]

_____

[13] "Pursuant to regulation, medical service providers who contract with a health care services plan are entitled to reimbursement at the contracted rate for those services provided to members of the plan who are covered by the contract. ([Regulation] 1300.71, subd. (a)(3)(A).) Medical service providers who provide services to members of a health care services plan but do not have a written contract with the health care services plan for the services at issue are entitled to reimbursement for the 'reasonable and customary value for the health care services rendered' only for 'emergency services.' ([Regulation] 1300.71, subds. (a)(3)(B).) For nonemergency services, such medical service providers are entitled to reimbursement from the plan, but only for 'the amount set forth in the enrollee's Evidence of Coverage.' (*Id.*, subd. (a)(3)(C).) Often, there is a difference between the 'amount set forth in the enrollee's Evidence of Coverage' and the amount billed by a medical provider; the amount billed is almost invariably more than the amount set forth in the plan. Medical providers who provide 'non-emergency services' in the absence of a contract covering those services often attempt to obtain the difference between 'the amount set forth in the enrollee's Evidence of Coverage' and their 'reasonable and customary' ([Regulation] 1300.71, subd. (a)(3)(B), (C)) rates by billing the individual patients directly, a practice referred to as 'balance billing.'" (*YDM, supra*, 16 Cal.App.5th at pp. 620-621.)

(f) Maximum reimbursement rates for anesthesia services shall be determined in accordance with this Section. . . ." (See Welf. & Inst. Code, §§ 14077 [requiring the department to establish a "uniform schedule for reimbursing physician services to Medi-Cal patients"], 14201 [the statute's purpose is to provide recipients of public assistance with the "opportunity to enroll in prepaid health plans"], 14205 ["[A]all provisions of Chapter 7 [(basic health care)] . . . shall be applicable to the provisions of this chapter [(prepaid plans)]."].) Our state regulations are consistent with federal Medicaid law. (42 C.F.R. § 447.15 ["A State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual."].) Acknowledging the applicable state and federal law, IEHP's contract with the department commands that "[a]ll Subcontracts shall be in writing and in accordance with the requirements of the 42 CFR 438.230(b)(2), Knox-Keene Health Care Services Plan Act of 1975, Health and Safety Code Section 1340 et seq.; Title 28, Section 1300 et seq.; Welfare and Institutions Code Section 14200 et seq.; Title 22 CCR Section 53800 et seq.; and other applicable Federal and State laws and regulations." Providers, like plaintiffs, are not exempt from the federal and state law requirement mandating they accept the Medi-Cal fee schedule rate as full payment for services rendered to Medi-Cal enrollees of a Medi-Cal managed care plan, unless they contract with the Medi-Cal managed care plan for a different specified reimbursement rate. Here, plaintiffs have not alleged the existence of any written contract or evidence

27

that indicates IEHP agreed to pay the fair market value—a value greater than the Medi-Cal fee schedule rate—for plaintiffs' services.

In short, having failed to negotiate, and contract for, a higher rate of payment, the applicable Medicaid/Medi-Cal statutes and regulations mandate that plaintiffs accept a reduced reimbursement amount as set forth in the Medi-Cal fee schedule.[14]

### 3. *Declaratory relief.*

In their third cause of action, plaintiffs sought declaratory relief based on IEHP's failure to pay plaintiffs the "fair market value" for their nonemergency anesthesia services provided to IEHP's HMO enrollees. An action for declaratory relief is proper when a plaintiff "desires a declaration of his or her rights or duties with respect to another . . . ." (Code Civ. Proc. § 1060.) A request for declaratory relief may be brought "alone or with other relief." (*Ibid*.) Plaintiffs' declaratory relief claim is derivative of their other claims. Because they failed to state sufficient facts to support their other claims, the trial court did not err in sustaining IEHP's demurrer to the declaratory relief cause of action without leave to amend. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 53-54 [demurrer is proper when the plaintiff has not stated sufficient facts to support a statutory claim and the declaratory relief claim is derivative of the statutory claim].)

---

[14] On April 5, 2021, IEHP filed a request for judicial notice of (1) a Medi-Cal provider agreement; (2) a U.S. Centers for Medicare and Medicaid Services Claim Form (CMS-1500 Form); (3) an official department compliance statement for payment of noncontracted provider claims; (4) the department's March 11, 2015 decision regarding amendment or repeal of regulation 1300.71, subdivision (a)(3)(B); and (5) the joint powers agreement between Riverside and San Bernardino Counties, which created the IEHP. The request is denied, as the documents were not necessary for our resolution of the issues presented.

## III.  DISPOSITION

The judgment is affirmed.  IEHP shall recover its costs on appeal.

McKINSTER
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.

Filed 7/1/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| ALLIED ANESTHESIA MEDICAL GROUP, INC. et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>INLAND EMPIRE HEALTH PLAN,<br><br>    Defendant and Respondent. | E074729<br><br>(Super.Ct.No. CIVDS1806917)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT

The requests (filed June 29 and 30, 2022) for publication of a nonpublished opinion filed in the above matter on June 10, 2022, are GRANTED. The opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c)(2), (3), (6) and (8).

IT IS SO ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b).

McKINSTER _____
Acting P. J.

We concur:

MILLER _____
            J.

CODRINGTON _____ J.